# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 1 9 2013



for CHIEF JUSTICE

This opinion was filed for record
a. 8:00 a.m. on Dec. 19, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EVAN SARGENT, | ) | No. 87417-4 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| SEATTLE POLICE DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | Filed _____ DEC 1 9 2013 |

MADSEN, C.J.—At issue is the proper scope of the effective law enforcement exemption of the Public Records Act (PRA), chapter 42.56 RCW. The Seattle Police Department (SPD) used this exemption to justify nondisclosure of documents regarding the investigation of an altercation between petitioner Evan Sargent and an SPD officer. Sargent raises several challenges to the Court of Appeals decision holding that the effective law enforcement exemption applies categorically to an investigation file where the prosecutor has declined to file charges and has referred the case back to the SPD for follow-up investigation and to information contained in an internal investigation file.

We hold that the exemption does not apply categorically to the requested criminal investigation information or to the requested internal investigation information. Further, although we agree with the Court of Appeals that the exemption does not apply categorically to witness identification, we hold that remand on this issue is not warranted. We agree with the Court of Appeals that the SPD properly withheld Sargent's nonconviction information under the Washington State Criminal Records Privacy Act (CRPA), chapter 10.97 RCW, and that the Court of Appeals correctly remanded for reconsideration of penalties. Sargent is entitled to attorney fees to the extent that he prevailed on appeal. We reverse the Court of Appeals in part, affirm in part, and remand to the trial court for reconsideration of the appropriate penalty.

## FACTS

This case stems from a July 28, 2009 confrontation between Sargent and off-duty SPD Officer Waters in a West Seattle alleyway. The parties dispute the facts. Sargent contends that he parked his car in an alleyway to make a commercial stop. While he was inside picking up laundry, Officer Waters drove up the alleyway and became irate when he could not locate the owner of the parked car blocking his way. Sargent states that Waters proceeded to pound on the hood of his car, punch off his passenger side mirror, and eventually draw his weapon, without identifying himself as an SPD officer. Waters contends he did identify himself as a police officer and that Sargent instigated the confrontation by pinning Waters up against a wall with his car and hitting him with a baseball bat.

2

Sargent was arrested for assault for swinging his bat at Officer Waters and spent the night in jail. Because Sargent was not released, the SPD referred the case to the King County Prosecuting Attorney's Office (KCPA) as a "rush file." *See* CrR 3.2.1 (requiring a judicial determination of probable cause within 48 hours after arrest). On August 6, 2009, the KCPA declined to file charges and referred the case back to SPD for follow-up investigation.

Sargent submitted PRA requests for information related to the confrontation, hoping to mount a civil rights challenge. His first request on August 31, 2009 sought records of the incident report and the name and badge number of the SPD officer. Sargent supplemented his initial request on September 1 by adding a request for copies of the 911 tapes and the computer aided dispatch (CAD) log related to the incident. In letters dated September 4 and September 9, 2009, the SPD denied Sargent's PRA requests, citing the RCW 42.56.240 exemption for effective law enforcement. Sargent appealed the denial through the SPD internal process, but the SPD agreed to disclose only the name of the SPD officer.

Meanwhile, by October 23, 2009, the SPD had conducted its final witness interview and in January 2010, referred the matter to the Seattle City Attorney for charges. The city attorney declined to prosecute Sargent and the criminal investigation was closed.

On February 5, 2010, Sargent renewed his original PRA request and added a request for written and recorded communications regarding a pending internal SPD

disciplinary investigation of Officer Waters. On March 10, 2010, the SPD released its first production of responsive documents. This initial production included the 911 tapes and CAD log from the incident, with all witness names redacted. The SPD withheld their internal investigation file, citing the effective law enforcement exemption. Sargent contacted the SPD about his outstanding requests and the SPD produced a second batch of responsive documents on April 5. This production included written communications and additional materials in the investigation file but redacted names and identification information under the effective law enforcement exemption. Additionally, the SPD withheld Sargent's nonconviction data and continued to withhold any information related to the internal disciplinary investigation of Officer Waters. On April 21, Sargent corresponded with the SPD, asking substantive questions about the documents remaining in the SPD's possession. On April 30, the SPD completed the internal investigation of Officer Waters.

PROCEDURAL HISTORY

Sargent filed a complaint for relief under the PRA on August 5, 2010 in King County Superior Court. At a show cause hearing, the trial court ordered production of unredacted requested information and assessed a $30,270 penalty against the SPD. The trial court reasoned that once the case was first referred to the KCPA the effective law enforcement exemption was no longer categorical. The court also found that the SPD acted in bad faith when it continued to withhold information after the final witness interview had been conducted. The court therefore awarded the maximum penalty of

$100 per day after this point and the minimum penalty of $5 per day before this point when the SPD still believed in good faith that the exemption applied categorically.

The SPD appealed and the Court of Appeals reversed in substantial part. *Sargent v. Seattle Police Dep't*, 167 Wn. App. 1, 260 P.3d 1006 (2011). The Court of Appeals held that the effective law enforcement exemption did not end when the case was referred to the KCPA for filing or with the final witness interview but continued to apply categorically until the case was referred for a second time to prosecutors and the investigation was closed. *Id.* at 12-15. The court further held that the exemption applied categorically to the internal disciplinary investigation of Officer Waters and hence the SPD properly withheld those files as well. *Id.* at 21-22. Although the nondisclosure of witness identities was not covered by the categorical exemption, the Court of Appeals thought that the SPD may have reasonably relied on case law suggesting otherwise and remanded to give the SPD an opportunity to justify its redaction. *Id.* at 18-19. The court also held that the SPD properly withheld Sargent's nonconviction criminal history under the CRPA. *Id.* at 20-21. Finally, the Court of Appeals reasoned that the trial court abused its discretion in awarding a maximum penalty where there was no showing of bad faith or gross negligence. *Id.* at 22-25. The court remanded for a redetermination of the witness identification issue and reconsideration of the penalty.

ANALYSIS

1. The PRA and the effective law enforcement exemption

    a. Standard of review

Judicial review of agency denials of PRA requests is de novo. RCW 42.56.550(3) ("Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo."); *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997).

The PRA mandates broad public disclosure. RCW 42.56.030 ("The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know."); *Newman*, 133 Wn.2d at 570; *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 130, 580 P.2d 246 (1978). The PRA requirement of disclosure is broadly construed and its exemptions are narrowly construed to implement this purpose. RCW 42.56.030; *Cowles Publ'g Co. v. Spokane Police Dep't*, 139 Wn.2d 472, 476, 987 P.2d 620 (1999); *Newman*, 133 Wn.2d at 571. Disclosure is therefore mandated unless the agency can demonstrate proper application of a statutory exemption to the specific requested information; the agency bears the burden of proof. *Newman*, 133 Wn.2d at 571 (stating that "the agency claiming the exemption bears the burden of proving that the documents requested are within the scope of the claimed exemption"); *Hearst*, 90 Wn.2d at 130 ("The statutory scheme establishes a positive duty to disclose public records unless they fall within the specific exemptions.").

b. The PRA effective law enforcement exemption does not apply categorically to block production of the criminal investigation materials Sargent requested

Sargent submitted two PRA requests to the SPD for information related to the criminal investigation concerning his confrontation with Officer Waters. The SPD denied Sargent's requests, reasoning that the PRA's exemption for effective law enforcement categorically prevented disclosure of the information. The effective law enforcement exemption to the PRA provides that the following information is exempt from disclosure:

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.56.240(1).

Like all exemptions to the PRA, this exemption is to be construed narrowly. This policy of narrow construction is embedded in the PRA statute itself: "This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy [of disclosure] and to assure that the public interest will be fully protected." RCW 42.56.030. The PRA also instructs courts reviewing agency actions to "take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

7

Typically, the agency claiming exemption must prove that nondisclosure of the particular requested documents is essential to effective law enforcement. However, this court has held that the effective law enforcement exemption applies categorically in a narrow set of circumstances. In this case, the SPD did not prove why the exemption applied to each document Sargent requested, but instead contended that the exemption applied categorically and automatically to block production of the entire investigative file.

We established the categorical application of the effective law enforcement exemption in *Newman*. In *Newman*, a journalist submitted a PRA request for access to an ongoing murder investigation file. 133 Wn.2d at 568-69. The law enforcement agency denied Newman's request, claiming that nondisclosure of the entire file was essential to effective law enforcement. *Id*. Although the court recognized that agencies typically bear the burden to prove that nondisclosure of particular documents is essential to effective law enforcement, the circumstances of the case justified categorical exclusion of the entire file. *Id*. at 573-74. Specifically, because the crime was unsolved and enforcement proceedings were still contemplated, the agency should not be required to parse the relevance of individual documents. *Id*. at 574-75. In reaching this conclusion, the court focused on two factors. *Id*. at 574; *see Cowles*, 139 Wn.2d at 477-78. First, the police would have difficulty segregating sensitive and nonsensitive information where the investigation was ongoing. Second, the law enforcement agency, rather than the court, was the proper party to determine whether nondisclosure was essential. For these

reasons, this court held that the requested information was categorically exempt from disclosure.

Two years later in *Cowles*, this court limited the categorical application established in *Newman*. In *Cowles*, a reporter requested information related to the arrest of an assistant city attorney for drunk driving and attempted assault. 139 Wn.2d at 474-75. At the time of the PRA request, the police had already referred the case to the prosecutor for filing. *Id.* The court reasoned that the exemption did not apply categorically because the policies motivating *Newman* were absent. First, because the suspect was known and the case was already referred to a prosecutor, there was no risk of disclosing sensitive information that might interfere with apprehension of the suspect; the agency could thus assess the relevance of individual documents. *Id.* at 477-78. Second, the police were not "institutionally better suited" than courts to determine which information was essential to law enforcement. *Id.* at 478-79. The court established a bright line that "where the suspect has been arrested and the matter referred to the prosecutor," nondisclosure is not categorical and automatic. *Id.* at 479-80. Instead, the burden rests with the agency claiming exemption to prove the propriety of nondisclosure to the trial court on a document-by-document basis. *Id.*

This court recently reinforced *Cowles'* limitation of the *Newman* categorical exemption in *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 243 P.3d 919 (2010). In that case, a Seattle Times reporter submitted a PRA request for information related to the investigation of a city of Lakewood shooting of four police officers. *Id.* at 585-86. The

9

respondents claimed the documents were properly categorically withheld under the effective law enforcement exemption. *Id.* at 592-93. Because the murder investigation was closed and the suspect deceased, the court concluded that the case "is outside the realm of *Newman* and is on point with *Cowles*." *Id.* at 594. The effective law enforcement exemption did not apply categorically, but instead would depend on a "record-by-record analysis, with the requested records subject to in camera review by the court." *Id.*

Like in *Cowles* and *Serko*, Sargent's request does not fall within the categorical exemption created in *Newman*. The text of the PRA mandates narrow construction of its exemptions. The categorical exemption of broad categories of information conflicts with this policy. *See Newman*, 133 Wn.2d at 574 (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 261, 884 P.2d 592 (1994) ("In general, the Public Records Act does not allow withholding of records in their entirety.")). This is why the categorical application created in *Newman* applies only to a small class of information, the nondisclosure of which we are confident is always essential to effective law enforcement: situations where police have not yet referred the matter to a prosecutor for a charging decision and revelation to the defendant.

Here, the SPD had concluded its investigation and referred Sargent's case to the prosecutor for a charging decision. At that point, the prosecutor could have pressed charges and disclosed the information to Sargent. The fact that the prosecutor declined to file charges and requested the SPD to conduct further investigation is of no import.

*Cowles* recognized that referral to prosecutors signals the police's conclusion of its investigation and is a bright line for termination of the categorical exemption. The categorical exemption adopted in *Newman* is court created; it is not provided for in the PRA. Expanding the court-made rule to cases that have been referred for charges but rejected by the prosecutor is a sweeping change that is not justified by the express language of the exemption, nor by the public policy favoring disclosure and accountability of government agencies to the public they serve.

Additionally, neither of the policies motivating the court's decision in *Newman* is present in this case. Unlike in *Newman* where there was an unidentified murderer on the loose, here Sargent had been identified and taken into custody, the case was referred to the prosecutor, and the prosecutor determined that there was not enough evidence to file charges. These actions signaled that the case was solved and the SPD would no longer have trouble segregating sensitive from nonsensitive information. Additionally, a court would be in as good of a position as law enforcement to judge whether nondisclosure was essential. The prosecutor's decision to refer the case back to the SPD for follow-up investigation does not alter these facts. In sum, the policies underlying our decision in *Newman* no longer apply and categorical application of the exemption is inappropriate.

The test proposed by the SPD is also unworkable. The Court of Appeals and the SPD admit that the categorical exemption was lost when the case was first referred to the prosecutor. If Sargent had submitted his requests during this time frame, instead of a few weeks later when the case had been referred back to the SPD for follow-up, the SPD

11

would have been required to prove that nondisclosure of each individual record was essential to effective law enforcement. It is nonsensical to deny Sargent access to these same documents based on the timing of his request. *Cowles* established a workable bright-line test that provides notice to both parties and reasonably accommodates the competing interests of public access and effective investigation, and we see no reason to alter this balance.

This is not to say that police cannot continue to protect investigations from disclosure following referral to a prosecutor. Some of the information Sargent sought may very well have been exempt. We simply hold that the SPD had the burden to parse the individual documents and prove to the trial court why nondisclosure was essential to effective law enforcement. *See Cowles*, 139 Wn.2d at 479 (recognizing the propriety of in camera review of specific documents to determine whether the exemption applies). The SPD made no such showing. Accordingly, we reverse the Court of Appeals and reinstate the trial court opinion on this point.

c. The PRA effective law enforcement exemption does not apply categorically to block production of the internal investigation materials Sargent requested

When Sargent renewed his PRA request in February 2010, he added to his request written and recorded communications regarding the SPD's internal disciplinary investigation of Officer Waters following his confrontation with Sargent. The SPD withheld the internal investigation information, arguing that the categorical exemption established in *Newman* should extend to this class of information. We disagree.

Internal investigation materials are "specific investigative records" subject to the language of the effective law enforcement exemption. RCW 42.56.240(1); *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 728-29, 748 P.2d 597 (1988). This court has held that the effective law enforcement exemption applies to all investigations "'designed to ferret out criminal activity or to shed light on some other allegation of malfeasance.'" *Koenig v. Thurston County*, 175 Wn.2d 837, 843, 287 P.3d 523 (2012) (quoting *Columbian Publ'g Co. v. City of Vancouver*, 36 Wn. App. 25, 31, 671 P.2d 280 (1983)). The internal investigation of police misconduct certainly aims to "shed light" on "malfeasance" and so the SPD investigation of Officer Waters would be exempt if nondisclosure was essential to effective law enforcement.

In *State Patrol*, this court held that nondisclosure of internal investigation materials was essential to effective law enforcement in that case. 109 Wn.2d at 729. The court reasoned that Washington's effective law enforcement exemption has broader application than the federal equivalent and as such "protects law enforcement agencies and 'effective law enforcement' from destructive intrusion." *Id.* at 730-32. Because "[e]ffective law enforcement requires a workable reliable procedure for accepting and investigating complaints against law enforcement officers," the court held that the identities of witnesses and subjects of internal investigations were exempt from disclosure. *Id.* at 729-33.

But we have never held this exemption to apply *categorically* to internal investigations and we decline to do so here. Far from categorically exempting the entire

13

investigation file, in *State Patrol*, this court held "in light of the circumstances of [that] case" only the names of investigation witnesses and subjects were exempt from disclosure. *Id.* at 729-30, 733; *see also Ames v. City of Fircrest*, 71 Wn. App. 284, 295, 857 P.2d 1083 (1993) ("The plurality holding in *Cowles* is case specific and does not establish a broad principle that all information in the records of any investigation characterized as an internal investigation is automatically exempt."). Here, the SPD refused to disclose the entire internal investigation file, even though Sargent already knew that Waters was the subject of the investigation and was seeking more than witness names.

Extension of the categorical effective law enforcement exemption to internal agency investigations would also conflict with the central tenets of *Newman*. "The investigative records exemption is designed to protect the integrity of law enforcement investigations," and thus should only apply categorically when intimately related to that law enforcement investigation. *See Koenig*, 175 Wn.2d at 843. The *Newman* court determined only that the exemption should apply categorically to an "open active police investigation file." 133 Wn.2d at 575. The internal investigation of Officer Waters does not constitute an open active police investigation in the same sense. Although the internal investigation of Officer Waters' conduct could have led to criminal charges, such a criminal investigation would be conducted outside the parameters of the internal investigation. The main purpose of the internal investigation is to reach an internal disciplinary remedy for proved misconduct. The SPD could have segregated the

information into sensitive and nonsensitive portions, and a court would have been able to judge just as well as the police whether nondisclosure of the sensitive pieces was essential to effective law enforcement or would merely present an "inconvenience or embarrassment" to the SPD. *See* RCW 42.56.550(3); *Cowles*, 139 Wn.2d at 477-78; *Newman*, 133 Wn.2d at 574.

The plain language of the effective law enforcement exemption also supports our holding that the exemption does not apply categorically to internal investigations. The exemption separates "investigative, law enforcement, and penology agencies" from "state agencies vested with the responsibility to discipline members of any profession" as two categories of agencies that may compile information subject to the exemption. RCW 42.56.240(1). The *Newman* categorical exemption concerns the first category of investigative agencies, whereas the internal investigation of Officer Waters falls into the second category. The clear separation of these two types of agency documents and the difference in function supports their separation for purposes of categorical application of the exemption.

Finally, in the context of a criminal investigation such as in *Newman*, the public would be better served by keeping the requested information confidential so that the police could finish their investigation and catch the perpetrator. However, the public would be better served by disclosure of the internal investigation information because the public has an interest in knowing about claimed misconduct at public agencies. In fact, this is exactly the type of disclosure envisioned by the PRA's mandate for broad public

access to information to "maintain control over the instruments that they have created." RCW 42.56.030.

As with the SPD criminal investigation material, we do not hold that the effective law enforcement exemption can *never* prevent disclosure of internal investigation materials. The statute clearly covers internal investigations, and this court has held certain internal materials exempt from disclosure. We simply decline to extend the *categorical* application of the exemption derived in *Newman* in the context of a criminal investigation to this type of internal investigation material. Instead, when an agency withholds internal investigation information citing the effective law enforcement exemption, the burden will rest with the agency to prove that specific portions of the internal file are essential to effective law enforcement.

2. The Court of Appeals erred by remanding to the trial court for reconsideration of whether the effective law enforcement exemption allowed the SPD to withhold witness identities from production

When the SPD eventually produced relevant documents to Sargent in March 2010, it redacted all names of witnesses from those documents, citing RCW 42.56.240(2) (exempting from disclosure witnesses of a crime "if disclosure would endanger any person's life, physical safety, or property" or if the witness requests nondisclosure). The SPD later argued before the trial court that the witness identities were exempt because disclosure would have a chilling effect on other witnesses, thus impairing effective law enforcement under RCW 42.56.240(1). The trial court held that the SPD failed to prove that witnesses' lives, physical safety, or property were at risk or that any witness

requested nondisclosure. The trial court therefore ordered the SPD to reproduce these documents in unredacted form. The Court of Appeals reversed, reasoning that although the SPD made no showing that RCW 42.56.240(2) applied, it may have reasonably relied on case law suggesting that the RCW 42.56.240(1) exemption for effective law enforcement would apply categorically to witness identities. *Sargent*, 167 Wn. App. at 16-18. The court therefore remanded to give the SPD an opportunity to argue why the effective law enforcement exemption should apply to the witness identities at issue. *Id.* at 18. We reverse the Court of Appeals on this issue and reinstate the trial court's ruling.

The PRA protects witness identities in two provisions. The effective law enforcement exemption in RCW 42.56.240(1) can prevent disclosure due to the potential chilling effect on other witnesses who may be discouraged from coming forward if they know that their identity will be disclosed. Additionally, RCW 42.56.240(2) provides separate protection by exempting witness identities where "disclosure would endanger any person's life, physical safety, or property" or where the witness requests nondisclosure.

The burden is on the agency to establish that nondisclosure is in accordance with one of these PRA exemptions. RCW 42.56.550(1) ("The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records."). The SPD had the burden to show that nondisclosure was essential to effective law enforcement under RCW 42.56.240(1) or that disclosure would

endanger a person's life, physical safety, or property, or that a witness had requested nondisclosure under RCW 42.56.240(2).

At the show cause hearing, the SPD clearly understood that it needed to come forward with specific evidence of chilled witnesses or other evidence of impeded law enforcement. The SPD acknowledged that after Sargent's February requests it "no longer asserted the categorical exemption" but instead redacted witness names under the "central effective law enforcement exemption which continues to exist after the case is not open and active." Verbatim Report of Proceeding (VRP) at 12. But, as both the trial court and Court of Appeals recognized, the SPD made no actual showing that redaction of witness names was essential to effective law enforcement in this particular case. A general contention of chilling future witnesses is not enough to exempt disclosure. A remand to give the SPD another opportunity to make the showing required to trigger the exemption is unwarranted.

Even if the SPD did believe the exemption applied categorically, remand would still be inappropriate. The SPD contends that remanding for additional fact-finding here would follow long-standing precedent from this court. However, the cases SPD relies on are distinguishable. In each case where remand was ordered, the trial court had not yet addressed whether an exemption applied. *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 154, 240 P.3d 1149 (2010); *Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1 of Clark County*, 138 Wn.2d 950, 964, 983 P.2d 635 (1999). For example, in *Concerned Ratepayers*, the trial court determined a technical specifications document was not

subject to disclosure under the PRA because a public agency's review, evaluation, and reference to the document did not constitute "use" under the PRA. 138 Wn.2d at 957. This court disagreed and held the document was a public record. *Id.* at 963. Although the agency did not argue the document was exempt upon the initial disclosure request nor directly argue the exemption before this court, we remanded for the trial court to make a determination of whether the specifications were exempt as research data under former RCW 42.17.310(1)(h) (2005), *recodified as* RCW 42.56.210, as this determination was not previously made. *Id.* at 958. *Concerned Ratepayers* differs from the present case because here, the trial court *did* reach the question of whether the law enforcement exemption applied.

Similarly in *O'Neill*, this court remanded to the trial court to determine whether the PRA was violated by nondisclosure of metadata from multiple e-mails. 170 Wn.2d at 151. In *O'Neill*, the city provided the metadata from several of the e-mails, but did not provide the metadata from one of the e-mails that was destroyed. *Id.* at 144. The individual brought suit under the PRA, but the trial court dismissed the action. *Id.* The Court of Appeals found that metadata must be disclosed under the PRA as a public record, which we affirmed. *Id.* at 148. We remanded for the trial court to consider whether the deletion of metadata violated the PRA, based upon the outcome of a subsequent search of the hard drive. *Id.* at 151. In contrast, here the SPD plainly failed to offer any evidence that disclosure of witness identities would endanger any of the

witnesses. Remand is not appropriate where the trial court properly considered SPD's arguments and SPD simply failed to meet its burden.

3. The trial court abused its discretion by failing to consider all of the *Yousoufian 2010* factors in its assignment of a penalty

The PRA requires imposition of per diem penalties up to $100 per day whenever a violation is found. RCW 42.56.550(4). Assignment of a penalty within this range is subject to the "discretion of the court." *Id.* Accordingly, we review for abuse of discretion. *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 430-31, 98 P.3d 463 (2004) (*Yousoufian 2004*). Discretion is abused where the decision is "manifestly unreasonable" or based on "untenable" reasoning. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 458-59, 229 P.3d 735 (2010) (*Yousoufian 2010*).

In *Yousoufian 2010*, this court established a framework to guide trial courts' determination of penalties within the range provided under the PRA. The court identified seven mitigating factors and nine aggravating factors to aide assessment of agency culpability. *Id.* at 460, 467-68. These mitigating factors may justify a decrease in the penalty:

> (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

*Id.* at 467 (footnotes and citations omitted). These aggravating factors may justify an increase in the assigned penalty:

(1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id.* at 467-68 (footnotes and citations omitted). The court cautioned that no one factor is controlling and sometimes multiple factors will not be relevant. *Id.* at 468.

Here, the trial court failed to apply these factors even though we decided *Yousoufian 2010* almost five months before the show cause hearing. The trial court did not mention *Yousoufian 2010* or engage in any sort of balancing analysis, but instead focused exclusively on whether the SPD acted in bad faith to calculate a penalty.

Although bad faith is an important consideration under *Yousoufian 2010*, it cannot be the only consideration. *Yousoufian 2010* does cite bad faith, both as a historical basis for awarding high penalties and as a newly established aggravating factor. 168 Wn.2d at 460, 468. But the *Yousoufian 2010* court also explicitly warned that "a strict and singular emphasis on good faith or bad faith is inadequate to fully consider a PRA penalty determination." *Id.* at 460-61. Although not all factors may apply in every case, "no one factor should control" and the trial court here abused its discretion by not conducting its analysis within the *Yousoufian 2010* framework. *Id.* at 468.

In this situation, remand is the appropriate remedy. The Court of Appeals ordered remand in an almost identical situation in *Zink v. City of Mesa*, 162 Wn. App. 688, 256 P.3d 384 (2011). There, the decision in *Yousoufian 2010* was issued during the pendency of the appeal and the court remanded so the trial court could engage in the appropriate analysis. 168 Wn.2d at 705-06. Further, in *Sanders v. State*, 169 Wn.2d 827, 859, 240 P.3d 120 (2010), this court recognized that remand is generally the appropriate remedy but affirmed the trial court award in this particular instance because the trial court's analysis "anticipated" the not-yet-issued *Yousoufian 2010* analysis. Similarly, the *Yousoufian 2010* decision itself recognized that "the usual procedure is to remand to the trial court for imposition of the appropriate penalty." 168 Wn.2d at 468. It was only due to the "unique circumstances and procedural history" of the *Yousoufian 2010* case that this court set the penalty amount itself. *Id.* at 468-69. Here the trial court did not consider the multifactor framework even though the show cause hearing occurred well after the issuance of the *Yousoufian 2010* decision. We therefore remand for the trial court to consider all mitigating and aggravating factors outlined in *Yousoufian 2010*.

4. The SPD properly withheld Sargent's nonconviction records under the CRPA

When the SPD produced a second batch of relevant documents to Sargent in April 2010, it withheld Sargent's nonconviction criminal history. The SPD did not immediately explain this withholding. The trial court decision ordered release of some nonconviction documents—Sargent's booking information. VRP at 26-27 ("I don't know of anything in the law that forbids the release of booking information to the very

person who was booked. And none has been cited to me."). The SPD later cited the CRPA, chapter 10.97 RCW, as justifying its withholding the information. *Sargent*, 167 Wn. App. at 8 & n.1; Appellant's Opening Br. at 32-37. The Court of Appeals held that the SPD properly withheld the records because the CRPA permitted disclosure only for the purposes of challenging or correcting the information contained in the records and Sargent made no such allegation. *Sargent*, 167 Wn. App. at 20-21. Sargent took issue with this holding in his petition for review and his supplemental brief, arguing that this court's decision in *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 259 P.3d 190 (2011) mandates disclosure. Pet. for Review at 17; Suppl. Br. of Pet'r Sargent at 17-18.

At the time of the show cause hearing, the CRPA provided that "[n]o person shall be allowed to retain or mechanically reproduce any nonconviction data except for the purpose of challenge or correction when the person who is the subject of the record asserts the belief in writing that the information regarding such person is inaccurate or incomplete." Former RCW 10.97.080 (2010).[1] "Nonconviction data," furthermore, is defined as "all criminal history record information relating to an incident which has not led to a conviction or other disposition adverse to the subject, and for which proceedings are no longer actively pending." RCW 10.97.030(2). The CRPA by its terms clearly prohibits reproduction of any nonconviction data unless the subject of the record is requesting a copy in order to contest the accuracy or completeness of the documents.

---

[1] RCW 10.97.080 was amended to alter this provision. *See* LAWS OF 2012, ch. 125, § 3.

As the Court of Appeals explained, Sargent misinterprets our holding in *Bainbridge Island*. The *Bainbridge Island* court held that when a party requests a mix of data with *both* nonconviction and other information, the nonconviction data should be redacted and the remainder produced. 172 Wn.2d at 421-24. But Sargent requested materials, like his booking history documentation, that were composed *exclusively* of nonconviction data, and he did not assert in writing any inaccuracies or oversights. Therefore, the SPD properly withheld the documents in their entirety because the CRPA prohibits disclosure. Accordingly, we affirm the Court of Appeals on this issue.[2]

5. Sargent's motion to modify the clerk's notation ruling is denied

After the Court of Appeals issued its decision, Sargent filed two motions to present additional evidence under RAP 9.11. The Court of Appeals denied these motions, and Sargent did not assign error to this issue in his petition for review submitted to this court. When Sargent raised the issue for the first time in his supplemental brief filed after we granted review, the SPD filed a motion to strike the portions of Sargent's brief that dealt with the RAP 9.11 denial. This court granted SPD's motion to strike and Sargent moved to modify this ruling. We passed consideration of Sargent's motion to modify to the merits and considered the motion at the oral argument already scheduled for this case. We now deny Sargent's motion to modify.

RAP 13.7(b) provides, "If the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the . . .

---

[2] Notably, the CRPA has since been amended to allow the subject of the record to obtain a copy of their nonconviction data on file. LAWS OF 2012, ch. 125, § 3. If Sargent still desires this information, the CRPA would no longer block his request.

petition for review and the answer." Sargent did not assign error to the Court of Appeals' denial of his motions to present additional evidence in his petition for review. SPD's motion to strike the portions of his supplemental brief that raised the issue for the first time was properly granted, and we accordingly deny his motion to modify our ruling that so held.

6. Sargent is entitled to attorney's fees to the extent that he prevailed on appeal

Sargent requested attorney's fees on appeal at the Court of Appeals under RAP 18.1 and RCW 42.56.550(4). A request for fees on appeal made at the Court of Appeals will be treated as a continuing request in this court. RAP 18.1. RCW 42.56.550(4) mandates provision of "all costs, including reasonable attorney fees, incurred in connection with such legal action" to the party who prevails against an agency in a PRA claim. This language includes attorney's fees incurred on appeal and hence Sargent is entitled to an award of attorney's fees to the extent that he prevailed here. The parties are directed to submit an affidavit and any objections to this court for a determination of the appropriate award. RAP 18.1(d), (e), (f).[3]

CONCLUSION

We hold that the effective law enforcement exemption ceases to apply categorically to investigative records once the case is first referred to a prosecutor for a charging decision. We also hold that the SPD violated the PRA by withholding records

---

[3] The issue of whether Sargent's 2010 written and oral requests for clarification constituted new PRA requests is of no consequence given our holding that the SPD was required to respond to Sargent's formal PRA requests in the first instance. Sargent's requests for clarification in 2010 did not affect his right to disclosure, and we see no need to resolve this dispute.

of an internal disciplinary investigation. The effective law enforcement exemption does not apply categorically to this type of material. We further hold that the SPD had its chance to demonstrate a proper reason for withholding witness identities at the show cause hearing and remand is therefore inappropriate. Finally, we hold that the SPD properly withheld Sargent's nonconviction data under the CRPA and that remand for reconsideration of penalties in light of *Yousoufian 2010* is necessary. Accordingly we reverse in part, affirm in part, and remand to the trial court for reconsideration of penalties. Sargent is entitled to attorney's fees to the extent that he prevailed on appeal.

No. 87417-4

_Madsen, C. J._

WE CONCUR:

_Stephens, J._

_González, J._

_Gordon McCloud, J._

27

No. 87417-4

J.M. JOHNSON, J. (dissenting)—The majority's erosion of the effective law enforcement exemption to the Public Records Act (PRA),[1] chapter 42.56 RCW, threatens the efficacy of open and active criminal investigations. Rather than focusing limited resources and manpower on protecting the public, law enforcement must now divert efforts toward justifying the exemption of sensitive records in ongoing investigations. This flies in the face of *Newman*,[2] which explicated the PRA exemption in RCW 42.56.240(1) and expressly recognized that law enforcement agencies—not courts—are best suited to decide which information could compromise an investigation if released too early. Because the majority is most certainly out of step with *Newman*'s analysis of the PRA and *Newman*'s progeny, I dissent.

---

[1] RCW 42.56.240(1).
[2] *Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997).

The majority's application of *Newman* undermines a common law enforcement investigation procedure that is a necessary tool for the enforcement of our criminal code. When a criminal suspect is arrested without a warrant, the charges must be filed with the prosecutor's office within 48 hours. *See* CrR 3.2.1 (requiring a judicial determination of probable cause within 48 hours after arrest, unless probable cause was determined prior to arrest). This practice is known as "rush filing." In such situations, the case is referred to prosecutors who may prosecute or initially decline to prosecute while returning the case to law enforcement for further investigation. *See* Clerk's Papers (CP) at 141-42.

The main issue before us is whether the investigative records exemption to the PRA permanently expires when the case is first referred to a prosecutor or if the exemption resumes in the event that the prosecutor requests more investigation. The majority holds that even where the initial investigation must occur within 48 hours, the categorical exemption for open and active investigations expires once a case is referred to a prosecutor for a charging decision. The majority applies this rule even where, as here, the prosecutor sends the case back to law enforcement for further investigation

2

before an informed charging decision can be made. This hinders the use of one effective law enforcement procedure.

It is arbitrary to draw the line at the first referral to the prosecutor when the substance of the investigation cannot possibly be done within 48 hours. It is far more sensible to draw the line at the end of the executive branch's involvement with the case, when the investigation is truly closed. *See Cowles Publ'g Co. v. Spokane Police Dep't*, 139 Wn.2d 472, 483-84, 987 P.2d 620 (1999) (Talmadge, J., concurring). That is likely what the legislature intended.

I would hold that *Newman*'s categorical investigative records exemption to the PRA does not permanently expire once the case is first referred to a prosecutor. Rather, the exemption may renew in the event that the prosecutor requests further investigation from law enforcement. The Seattle Police Department (SPD) did not violate the PRA by withholding records of an investigation referred to a prosecutor's office for an immediate charging decision because the exemption was renewed when the prosecutor requested additional investigation. I would further hold that the investigative records exemption to the PRA applies to law enforcement internal disciplinary investigations. The majority's holdings are based on

3

improperly narrow readings of *Newman* and *Cowles*. Limiting the

categorical exemption in such a way fails to account for the necessities of

effective law enforcement practices.

ANALYSIS

A.   *Newman*'s Categorical Investigative Records Exemption Under RCW
     42.56.240(1) May Renew in the Event That the Prosecutor Requests
     Further Investigation

Pursuant to RCW 42.56.240(1), certain public records are exempt

from production when it would hinder effective law enforcement or

encroach on privacy:

> The following investigative, law enforcement, and crime
> victim information is exempt from public inspection and
> copying under this chapter:
>
> (1) Specific intelligence information and specific
> investigative records compiled by investigative, law
> enforcement, and penology agencies, and state agencies vested
> with the responsibility to discipline members of any profession,
> the nondisclosure of which is essential to effective law
> enforcement or for the protection of any person's right to
> privacy.

In *Newman*, 133 Wn.2d 565, this court considered whether documents

within an open and active criminal investigation file are categorically

exempt from production under the PRA as essential to effective law

enforcement. *Newman* involved a journalist's public records requests for

4

files in the ongoing police investigation into the 1969 murder of civil rights leader Edwin Pratt. *Id.* at 568. We held that

> the broad language of the statutory exemption requires the nondisclosure of information compiled by law enforcement and contained in an open and active police investigation file because it is essential for effective law enforcement. The language of the statute provides for a categorical exemption for all records and information in these files.

*Id.* at 574. We emphasized the necessity of a categorical exemption because "[r]equiring a law enforcement agency to segregate documents before a case is solved could result in the disclosure of sensitive information." *Id.* We noted that "[t]his exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case." *Id.*

Today's majority holds that under the limitations of *Newman* imposed by *Cowles*, *Newman*'s broad categorical exemption must end when police first refer an investigation to a prosecutor for a charging decision. This unnecessarily rigid reading of *Cowles* fails to account for the realities of law enforcement investigations and will most certainly operate to harm sensitive investigations. These costs will be imposed without commensurate benefits to government accountability. I am not advocating for a rule under which the records are forever shielded from public scrutiny; such a rule is

5

unsupported by language in the PRA. It is not a matter of *if* the records may be disclosed to the public, but *when*.

In *Cowles*, a newspaper publisher brought suit to compel production of a police incident report and booking photograph after a suspect had been arrested and the case was referred to a prosecutor for a charging decision. We distinguished the facts from *Newman* on the basis that the investigation in *Cowles* was no longer open and active. *Cowles*, 139 Wn.2d at 477-78. We noted that when a suspect is arrested and the case is referred to a prosecutor for a charging decision, "the risk of inadvertently disclosing sensitive information that might impede apprehension of the perpetrator no longer exists." *Id.* We ultimately held that "in cases where the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure of all records in the police investigative file." *Id.* at 479. After referral, the exemption must be justified on a case-by-case basis. *Id.* at 479-80.

This case, which involved "rush filing" and a request to law enforcement for further investigation, is distinguishable from *Cowles* in which we held that *Newman*'s categorical exemption expires when a suspect

is arrested and the case is referred to the prosecutor. *Cowles*, 139 Wn.2d at 479. In *Cowles*, the subject of the PRA request was arrested and the Spokane Police Department referred the case to the prosecutor the same day, requesting that charges be filed. *Id.* at 474-75. The investigation was no longer open and active, as the case had been referred to the prosecutor for a *final* charging decision. No further investigation was required.

Here, the case was referred to prosecutors twice. The investigation remained open and active after first referral to the prosecutor. Given the complicated set of circumstances surrounding this case, law enforcement could not possibly visit the location of the incident, interview all the witnesses, and take statements from both parties within a 48 hour period. Further investigation was necessary. The case was referred to prosecutors a second time after a thorough investigation, at which time prosecutors declined to file charges. Under this set of facts, it would be contrary to *Newman* and *Cowles* to hold that the categorical statutory exemption for information essential to effective law enforcement, RCW 42.56.240(1), expires upon the initial referral to prosecutors.

The concurring opinion in *Cowles* foresaw the need for the progression in our case law that we face today:

> [S]imply submitting an investigation to a prosecutor for a charging decision does not always end the investigation. The prosecuting authority, whether a city attorney's office or a county prosecuting attorney's office, must then decide whether there is a sufficient basis to file criminal charges. If the prosecuting authority determines there is an insufficient factual or legal basis to file charges, the case is clearly neither solved nor closed. . . . At that point, further investigation is required and the whole purpose for the exemption discussed in *Newman* applies.

139 Wn.2d at 484 (Talmadge, J., concurring). Justice Talmadge's concurrence presciently warned the court that the controversy before us could one day arise. Nonetheless, the facts in *Cowles* were sufficiently distinct from the concerns raised by Justice Talmadge to warrant leaving the issue open for another day. That day has come, and unfortunately, the majority opinion has failed to recognize *Cowles'* need to protect "effective law enforcement" procedures.

As Justice Talmadge pointed out in his *Cowles* concurrence, "[t]he appropriate line of demarcation for determining when a case is closed or solved is the point at which the executive branch of government has essentially concluded its involvement with the case." *Id.* at 483-84. I emphatically agree. Any other reading of *Newman* and *Cowles* fails to account for the gap created between the two cases. Not all law enforcement practices fit neatly in one category or the other; accordingly, *Newman* and its

progeny must be read flexibly to account for varying circumstances arising from law enforcement investigatory practices.

Furthermore, holding that the exemption must expire upon first referral to a prosecutor's office would lead to perverse and potentially devastating consequences. Under such a scenario, a criminal could be arrested and released, then submit a PRA request in order to gather information for use in destroying evidence or coercing witnesses. This certainly would not support the balance between open government and upholding the integrity of police investigations struck by the PRA and our case law.

As Justice Talmadge noted in his *Cowles* concurrence:

> The better point at which to say the case is "closed" is when the prosecuting authority has determined to file charges, as our earlier cases indicate. At that time, the case is essentially solved or closed from the perspective of the executive branch— the law enforcement agencies and the prosecuting authorities. The case is then within the province of the judicial branch of government, and it is no longer appropriate for the statutory exemption to apply. The broad policy of public disclosure . . . must then control.

*Cowles*, 139 Wn.2d at 484-85. I would hold that it is essential to effective law enforcement that investigative records remain categorically exempt in this limited circumstance where the case has been declined for prosecution,

the investigation is open and active, and enforcement proceedings are contemplated when the PRA request is received. The Court of Appeals properly rejected Evan Sargent's argument that SPD's "rush filing" with the King County prosecuting attorney terminated the criminal investigation for the purposes of the "effective law enforcement" exemption of RCW 42.56.240(1).

B.   *Newman*'s Categorical Investigative Records Exemption Applies to Open and Active Internal Disciplinary Investigations

On February 5, 2010, Sargent made his only request for the internal disciplinary investigation file of Officer Waters. CP at 41-42. The files were withheld as exempt and the investigation remained open and active until April 30, 2010. CP at 145. The trial court did not require the production of the internal disciplinary file. CP at 365. The Court of Appeals affirmed, recognizing that *Newman*'s "reasoning applies equally to disciplinary investigations." *Sargent v. Seattle Police Dep't*, 167 Wn. App. 1, 22, 260 P.3d 1006 (2011).

I agree. In *Koenig v. Thurston County*, 175 Wn.2d 837, 843, 287 P.3d 523 (2012) (quoting *Columbian Publ'g Co. v. City of Vancouver*, 36 Wn. App. 25, 31, 671 P.2d 280 (1983)), we explained that to fall under the *Newman* exemption, "[t]he investigation must be 'one designed to ferret out

10

criminal activity or to shed light on some other allegation of malfeasance.'" Internal disciplinary investigations into police misconduct are most certainly designed to accomplish these goals. The *Newman* exemption for open and active investigations should apply to internal disciplinary investigations such as this one. Because Sargent never resubmitted a PRA request after the investigation was closed on April 30, the SPD was under no obligation to produce the internal disciplinary investigative records regarding Officer Waters.

CONCLUSION

I would affirm the Court of Appeals' holding that the SPD did not violate the PRA by withholding records of a criminal investigation referred to a prosecutor's office for a potential "rush filing" charging decision, but returned by the prosecutor for more investigation before filing. Investigative records should be categorically exempt from production where the case has been declined for prosecution, the investigation is open and active, and enforcement proceedings are contemplated when the request is received. I would further affirm the Court of Appeals' holding that RCW 42.56.240, the investigative records exemption to the PRA, applies to law enforcement internal disciplinary investigations. *Newman*, as limited by *Cowles*, strikes a

11

balance between promoting government accountability and furthering sensitive law enforcement investigations. I fear that today's majority unsettles this balance in such a way that puts the public at risk through compromised law enforcement investigations.

Owens, J.

Fairhurst, C.J.

Wiggins, J.