# THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

JOEL ZELLMER,            )
                                )
             Appellant         )
                                )
       v.                          )
                                )
KING COUNTY,           )
                                )
             Respondent.     )
                                )

No. 76825-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 16, 2018

SPEARMAN, J. — Washington's Public Records Act (PRA) chapter 42.56 RCW requires agencies to respond to a public records request by conducting a reasonable search and providing all identifiable records. Prison inmate Joel Zellmer submitted two public records requests to the King County Prosecuting Attorney's Office (KCPAO) asking for photographs of the inside of his home that were taken on two specific dates. Zellmer argued that King County violated the PRA and acted in bad faith by failing to produce 235 digital photographs of the inside of his home until after his lawsuit was filed. The trial court dismissed the lawsuit. Because the KCPAO used an unreliable method for determining the date on which the photographs were taken, we conclude that the search was inadequate. However, because the undisputed record establishes that the agency did not act in bad faith, we conclude that Zellmer is not entitled to an award of penalties and affirm the dismissal.

FACTS

Zellmer has been an inmate at the Washington State Penitentiary in Walla Walla since 2010. The KCPAO's public records unit is comprised of a public records officer, Kristie Johnson, a public records paralegal, Myralynn Nitura, and a public records specialist, Meghan Moore. The KCPAO stores 59 banker's boxes of records relating to Zellmer's criminal case. Of these, 54 boxes are kept in the King County Courthouse and another five boxes are kept in the Appellate Unit in the King County Administration Building. Since his conviction, Zellmer has made 24 separate public records requests to the KCPAO.

On September 29, 2015, Zellmer submitted a public records request to the KCPAO (2015 Request) specifically asking for "[a]ll photographs taken of the inside of the home that was done on December 6, 2005. This group of photo's [sic] were taken just prior to a full search of this home (Pre-search photographs). The photographs would be of all rooms in the home as well all of the other living areas within the inside of this home." Clerk's Papers (CP) at 59. On October 6, 2015, the KCPAO sent a letter to Zellmer acknowledging the request and stating that it would provide an update by November 12, 2015. On November 12, 2015, the KCPAO sent a letter to Zellmer informing him that more time was needed to complete his request due to the number of boxes to be searched, and providing a new response deadline of December 10, 2015.

Nitura began by searching 53 of the 54 banker's boxes kept in the King County Courthouse for photographs taken on December 6, 2005.[1] Nitura did not search the

---

[1] Nitura did not search the remaining box because it was labeled "DO NOT USE! ARRANGE FOR PICK UP BY NATIONAL MERIT AGENT" and "Contains a Disputed File Re: Zellmer v. Zellmer Wrongful Death Inv. National Merit Ins. DO NOT REVIEW w/o checking with Brenneman." CP at 65-66. On December 6, 2016, Moore reviewed the contents of the box and determined that it contained no photographs responsive to Zellmer's requests.

boxes stored in the KCPAO Appellate Unit because, based on her previous experience with Zellmer's numerous public records requests, she knew that they did not contain photographs of the inside of the home. Her search produced a number of labeled disks containing digital photographs.[2] She checked the face of each disk for a content notation indicating that the disks contained photographs of the inside of the home, or a date notation of December 6, 2015. If the label met either of these criteria, or the label was not clear, then Nitura reviewed the contents of the disk on her computer.[3]

The digital photographs were stored on the disks in .JPG (image file) format. The data fields that appeared on the computer screen included a list of the digital photographs by file name, file type, file size, and "Date modified." CP at 42-44. If a photograph appeared to be of the inside of the home, and the "Date modified" data field showed December 6, 2005, she identified it as responsive to the request. This yielded a total of 31 digital photographs, which Nitura placed in a shared electronic folder. She inadvertently placed four additional photographs dated December 7, 2005 in the same folder, for a total of 35 photographs. On December 10, 2015, the KCPAO sent a letter to Zellmer indicating that it had identified 34 public records responsive to his request.[4] Zellmer paid the fee, and on January 19, 2015, the KCPAO sent him 35 digital photographs along with a close-out letter stating that the search was complete.

---

[2] Nitura also found printed photographs that appeared to be of the inside of the home, but none of them bore a date label, and KCPAO did not provide them.

[3] Nitura was unable to open three disks of the disks labeled December 6, 2005. She gave these disks to Johnson, who opened them and found a video but no photographs.

[4] According to KCPAO, this was a scrivener's error. The installment actually consisted of 35 photographs.

On February 5, 2016, the KCPAO received another public records request from Zellmer (2016 Request) asking for "1. All photographs taken on December 7, 2005 of the inside of the home that was searched. 2. Please include anything that was not produced in the photograph request previously for December 6, 2005. The photographs would be of all rooms in the house and any property within the home." CP at 38. On February 12, 2016, the KCPAO sent Zellmer a letter acknowledging receipt of the request and stating that it would provide an update by approximately March 21, 2016.

Given that the 2016 request asked for anything not produced in response to the 2015 request, the KCPAO realized that there was a possibility that responsive records had been missed. Accordingly, Nitura again searched the disks for photographs taken on December 6, 2005, but she did not find anything that had not already been provided to Zellmer. Nitura then reviewed the faces of the discs for a notation that the contents of the discs were from December 7, 2005, or that the photographs were of the inside of the home, or were unclear about the contents. Nitura provided Johnson a box of disks to review. Johnson also reviewed the face of the disks for a notation indicating that the disks related to December 6 or 7, 2005, or that they contained photographs of the inside of the home. She found one disk containing 24 photographs with a "Date modified" of December 7, 2005 and that were of the inside of the home. She did not find any photographs with a "Date modified" of December 6, 2005 that had not already been provided to Zellmer.

On March 21, 2005, the KCPAO sent Zellmer a letter indicating that it had identified 24 records responsive to his request for photographs of the inside of the home taken on December 7, 2005, and that it found nothing responsive to his request for additional photographs taken on December 6, 2005. Zellmer paid the fee, and the

KCPAO provided the 24 photographs, along with a close out letter stating that the search was complete.

On May 17, 2016, Zellmer filed a lawsuit alleging that the KCPAO violated the PRA by failing to produce all requested records for the 2015 and 2016 requests. In an effort to ascertain that nothing had been missed, Moore repeated the search. She identified a total of 294 digital photographs that "could be of the inside of the home and that could have been taken on 12/6/05 or 12/7/05." CP at 80. These included the 35 photographs with a "Date modified" of December 6, 2005 provided in response to the 2015 request and the 24 photographs with a "Date modified" of December 7, 2005 provided in response to the 2016 request. The remaining 235 photographs showed a "date modified" of December 9, 2005 or April 20, 2007.

The KCPAO decided that it could not rule out the possibility that these 235 photographs had been taken on December 6 or 7, 2005. Accordingly, on June 30, 2016, the KCPAO sent a letter to Zellmer indicating that it had again reviewed the boxes of documents related to his criminal prosecution and that "[a]s a result of that review we have enclosed 294 photographs that appear to be the inside of your home. This production includes the 59 photographs which were previously provided to you." CP at 83. The letter did not explain why the additional 235 photographs had been previously excluded from production.

Moore subsequently examined the metadata for the additional 235 photographs. She found that the metadata for all photographs with a date "modified" of December 9, 2005 also showed a date "Created" of December 9, 2005. CP at 277-78. And the metadata for all photographs with a date "modified" of April 20, 2007 also showed a date "Created" of April 20, 2007. CP at 280-81.

On March 17, 2017, King County moved for summary judgment dismissal of Zellmer's claims, arguing that the court could decide as a matter of law that it did not violate the PRA in responding to Zellmer's requests. The motion was set for April 21. On April 14, counsel for Zellmer filed a supplemental declaration with attachments, and King County objected that it was untimely filed. The supplemental declaration included excerpts from the deposition testimony of Johnson, Nitura, and Moore. On April 18, the trial court informed the parties that it needed to reschedule the hearing due to a last-minute conflict, and it moved the hearing to April 28. At the hearing, the trial court granted King County's motion to strike counsel for Zellmer's supplemental declaration as untimely. And on May 2, 2017, the trial court granted summary judgment to King County. Zellmer appealed.

## DISCUSSION

### Motion to Strike

Zellmer argues that the trial court erred in striking his counsel's supplemental declaration as untimely, because it was timely filed based on the actual hearing date. We review the interpretation of court rules de novo. Seto v. American Elevator, Inc., 159 Wn.2d 767, 772, 154 P.3d 189 (2007). "CR 1 requires Washington courts to interpret the court rules in a manner 'that advances the underlying purpose of the rules, which is to reach a just determination in every action.'" Spokane County v. Specialty Auto and Truck Painting, Inc., 153 Wn.2d 238, 245, 103 P.3d 792 (2004) (quoting Burnet v. Spokane Ambulance, 131 Wn.2d 484, 498, 933 P.2d 1036 (1997)). "In general, court rules 'contain a preference for deciding cases on their merits rather than on procedural technicalities.'" Buckner, Inc. v. Berkey Irr. Supply, 89 Wn. App. 906, 914, 951 P.2d 338 (1998) (quoting Vaughn v. Chung, 119 Wn.2d 273, 280, 830 P.2d 668 (1992)).

6

King County argues that the trial court properly struck the supplemental declaration because it was untimely based on the original hearing date. We disagree. CR 56(c) provides that the adverse party on summary judgment "may file and serve opposing affidavits, memoranda of law or other documentation not later than 11 calendar days prior to the hearing."[5] On its face, CR 56(c) unambiguously states documentation must be filed "not later than 11 calendar days before the hearing." CR 56(c) does not specify that the deadline strictly applies to the date the hearing was originally scheduled. Counsel for Zellmer filed the supplemental declaration on April 14, 2017, seven days prior to the scheduled hearing date of April 21. If the hearing had taken place as originally scheduled, the supplemental declaration would have been untimely. But the trial court on its own initiative rescheduled the hearing for April 28. As a result, the supplemental declaration was filed 14 days prior to the actual hearing date. King County had more than 11 days to review the information in the supplemental declaration, as the rules require. It suffered no prejudice. Accordingly, we conclude that the trial court erred in striking the supplemental declaration, and we include it as part of the record on review.

Dismissal of Lawsuit

Zellmer argues that the trial court erred in granting summary judgment dismissal because KCPAO violated the PRA by withholding 235 digital photographs until after this lawsuit was filed. "We review de novo the superior court's grant of summary judgment, using the same legal standard as that court." Bonamy v. City of Seattle, 92 Wn. App.

---

[5] The King County Local Civil Rules adopt the filing standards of CR 56. "The deadlines for moving, opposing, and reply documents shall be as set forth in CR 56 and the Order Setting Case Schedule." KCLCR 56(c)(2).

403, 407, 960 P.2d 447 (1998). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The PRA "is a strongly-worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). "The Act's disclosure provisions must be liberally construed, and its exemptions narrowly construed." Progressive Animal Welfare Soc. v. University of Washington, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (citing RCW 42.17.010(11); .251; .920). When a public records lawsuit is dismissed on summary judgment, "the agency bears the burden, beyond material doubt, of showing its search was adequate." Neighborhood Alliance of Spokane County v. Spokane County, 172 Wn.2d 702, 721, 261 P.3d 119 (2011) (citing Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999).[6] "The adequacy of a [records] search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." Neighborhood Alliance, 172 Wash.2d at 719-20 (citing Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1353-51 (D.C. Cir. 1983)). "To determine whether a search is reasonable, we focus not on whether a document exists that is responsive to the request, but on the nature of the search process." Rufin v. City of Seattle, 199 Wn. App. 348, 357, 398 P.3d 1237 (2017) review denied, 189 wn.2d 1034, 407 P.3d 1154 (2018).

King County asserts that the KCPAO properly provided Zellmer with all records that could be identified as responsive to his requests for photographs of the inside of the home that were taken on December 6 and 7, 2005. Zellmer concedes that the KCPAO

---

[6] Interpretations of the federal Freedom of information Act (FOIA) are useful in construing the language of Washington's PRA. Hearst, 90 Wn.2d at 128.

reasonably searched all locations where responsive records might be found. However, he contends that the KCPAO's search process was unreasonable because it relied on the "Date modified" data field to determine which digital photographs of the inside of the home were responsive to his request, despite knowing that the "Date modified" might not accurately reflect the date the photograph was actually taken.

The PRA requires agencies to produce "identifiable public records." RCW 42.56.080(2). A person seeking documents under the PRA must identify the documents with sufficient clarity to allow the agency to locate them. Wood v. Lowe, 102 Wn. App. 872, 878, 10 P.3d 494 (2000). "[T]his requirement of identification is satisfied when there is 'a reasonable description enabling the government employee to locate the requested records.'" Bonamy, 92 Wn. App. at 410 (quoting Bristol-Myers Co. v. F.T.C., 424 F.2d 935, 938 (C.A.D.C. 1970)).

Here, Zellmer made clear and unambiguous requests for photographs of the inside of the home taken on December 6 and 7, 2005, thereby satisfying the identification requirement. The KCPAO properly interpreted Zellmer's request for photographs of the inside of the house to be limited to photographs taken on the specific dates he requested. The agency correctly began its search by gathering all photographs of the inside of the home. However, KCPAO relied solely on the "Date modified" data field to determine which digital photographs of the inside of the home were responsive to Zellmer's requests. If the "Date modified" was December 6 or 7, 2005, KCPAO provided the photographs. If the "Date modified" was any other date, it did not provide the photographs.

Accordingly, the question is whether the KCPAO acted reasonably in eliminating from its production all photographs of the inside of the house that did not show a "date

modified" of December 6 and 7, 2005. King County contends that this approach was entirely reasonable because a photograph's date is a clear, useful tool to guide the search for date-limited requests such as Zellmer's. But here, it is apparent that the KCPAO simply assumed that the "Date modified" was the date the photographs were actually taken, even though there is evidence they should have known that this assumption was unwarranted. At deposition, Johnson acknowledged that the date that appears in the "date modified" data field "depends upon whether or not you modified it." CP at 202. She admitted she did not know when the photographs were taken off the camera and put onto the disks. She further admitted that if a photograph was taken on one date but electronically stored under a different date label, "[w]e would not know that was responsive." CP at 249. Despite this, KCPAO assumed the "Date modified" accurately reflected the date the photographs were taken.

King County also contends that the KCPAO properly provided all photographs that it was able to identify as taken on the two requested dates. But Johnson explained that the KCPAO decided to provide Zellmer with an additional 235 photographs of the inside of the home "[b]ecause we could not eliminate them as possibly being taken" on the requested dates. CP at 250. Similarly, Moore testified that the additional photographs "could not be ruled out as being non-responsive" and that the KCPAO decided to provide them out of "an abundance of caution." CP at 272. This appears to be a tacit admission that the KCPAO realized that it could not be certain whether the "Date modified" accurately reflected the date the photographs were taken.

After the KCPAO provided the additional 235 photographs to Zellmer in response to his lawsuit, it took the additional step of checking the metadata which showed the date created was the same as the date modified for all of the photographs. But this

10

belated discovery does not make KCPAO's original decision to rely solely on "date modified" reasonable. In Neighborhood Alliance, a public disclosure request was made for documents related to questionable hiring practices by county officials. 172 Wn.2d at 710-11. The request specifically asked for "the information in the 'date created' data field for the document as it exists on the specific Microsoft Publisher electronic document file created for the referenced seating chart. The requested information should also include, but not be limited to, the computer operating system(s) data record indicating the date of creation and dates of modification for the referenced seating chart document." Id. at 710. In response, the County produced a log showing the requested data fields. However, the "date created" field was later than the "date modified" field for each of the documents, and the agency offered no explanation. Id. at 711. It was discovered that the computer that generated the document had been replaced, and when the files were copied from the old hard drive to the new hard drive, the date of copying became the date of creation. Id. at 711. Thus, it is apparent that "date created" and "date modified" are an inherently unreliable way to ascertain the actual date that a document was created. Indeed, Moore acknowledged that the metadata for the 235 photographs in the post-lawsuit production indicates the date the photographs were "created" but "does not state the date that the photographs were taken." CP at 275.

In sum, KCPAO knew or should have known that the methodology it used to parse responsive from non-responsive records was inherently unreliable. The KCPAO did not communicate with Zellmer to explain that it was unable to conclusively determine the dates on which the photographs were actually taken and ask how he wished to proceed. Zellmer therefore had no way of knowing that KCPAO had excluded many photographs of the inside of the home on an unreliable basis. This was not

reasonable. Accordingly, we conclude that the trial court erred in dismissing Zellmer's lawsuit on summary judgment.

"A PRA claimant 'prevails' against an agency if the agency wrongfully withheld the documents." Gronquist v. Washington State Dep't of Licensing, 175 Wn. App. 729, 756, 309 P.3d 538 (2013). Here, given our conclusion that the KCPAO acted unreasonably, we conclude that Zellmer is the prevailing party and address the question of penalties.[7]

"The PRA requires imposition of per diem penalties up to $100 per day whenever a violation is found." Sargent v. City of Seattle, 179 Wn.2d 376, 397, 314 P.3d 1093 (2013) (citing RCW 42.56.550(4)). However, an inmate may be awarded penalties under the PRA only if "the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1). "[T]he legislature plainly intended to afford prisoners an effective records search, while insulating agencies from penalties as long as they did not act in bad faith." Francis v. Washington State Dept. Of Corrections, 183 Wn. App. 42, 60, 313 P.3d 457 (2013).

"In the PRA context, bad faith incorporates a higher level of culpability than simple or casual negligence." Faulkner v. Washington Dept. of Corrections, 183 Wn. App. 93, 103, 332 P.3d 1136 (2014).

> [T]o establish bad faith, an inmate must demonstrate a wanton or willful act or omission by the agency. 'Wanton' is defined as '[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.' Black's Law Dictionary 1719-720 (9th ed. 2009). Further, "'[w]anton differs from reckless both as to the actual state of mind and as

---

[7] RCW 42.56.550(4) provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record ... shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action . . . ." However, Zellmer did not request an award of attorney fees or costs below. Nor did he request fees and costs on appeal. Accordingly, we do not award them.

to the degree of culpability. . . . One who is acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Id. at 1720 (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 879-80 (3d ed. 1982)).

Id. at 103-04.

Zellmer argues that KCPAO acted in bad faith by inexplicably withholding 235 responsive records until he filed suit. We disagree. The KCPAO conducted a thorough search for photographs of the inside of the home, and provided all of the photographs which were labeled with a date of December 6 or 7, 2005. None of the additional 235 photographs had a date "created" or "modified" that matched the dates that Zellmer requested. Moreover, in April 2015, KCPAO sent the 235 photographs at issue to Zellmer's former attorney Nancy Collins in response to one of Zellmer's earlier public records requests. Although the agency should have recognized that "Date modified" was not a reliable way of determining the date the photographs were taken, the evidence does not support a finding that the KCPAO acted unreasonably or maliciously while being utterly indifferent to the consequences.

Affirmed

WE CONCUR:

_Spelman, J._

_Leach, J._

_Schindler, J._

13