211 P.3d 423 (2009)
David KOENIG, Appellant,
v.
PIERCE COUNTY, Respondent.
No. 61821-1-I.
Court of Appeals of Washington, Division 1.
July 13, 2009.
As Amended July 20, 2009.
*424 William J. Crittenden, Attorney at Law, Seattle, WA, for Appellant.
Daniel R. Hamilton, Attorney at Law, Tacoma, WA, for Respondent.
BECKER, J.
¶ 1 Appellant David Koenig requested records from the Pierce County Prosecutor relating to a particular criminal investigation. The prosecutor's office refused to provide portions of the records based on the work product exemption in the Public Records Act. We affirm the trial court's conclusion that the prosecutor did not violate the act.

FACTS
¶ 2 In January 2004, King County Sergeant Denny Gulla made an allegedly unlawful stop of a vehicle in the city of Buckley. After reviewing documents forwarded by various law enforcement agencies including the Pierce County Sheriff's Department, the Pierce County Prosecutor decided not to charge Gulla with any crime.
¶ 3 On December 12, 2005, Koenig sent a letter to the prosecutor's office, requesting records concerning the incident. The letter stated, "The point of this communication is to request that you provide me with a copy of all records that your agency has with regards to your determination not to press charges in this incident." On the same day, Koenig sent a similar letter to the Pierce County sheriff's department stating, "The point of this communication is to request that you provide me with a copy of all records that your agency has with regards to any related police investigation and referral to the county prosecutor's office."
¶ 4 Koenig received a separate response from each office. Deputy prosecutor Craig Adams responded on December 15, 2005 in his capacity as legal advisor to the sheriff's department. He said he had forwarded Koenig's request to the Law Enforcement Support Agency (LESA), which maintained all the sheriff's records. On December 22, 2005, LESA informed Koenig that his public disclosure report was ready to be picked up. On February 9, 2006, Koenig received 185 pages of documents (the LESA records) from the sheriff's department.
*425 ¶ 5 Deputy prosecutor Allan Rose responded on January 3, 2006 to Koenig's request to the prosecutor's office:
The requested matter was retrieved from archives and I have had a chance to review the file....
...
There are three hundred and eighty-one (381) pages of documents contained within the file. There are seven categories of documents in this file: police reports; transcripts of interviews, some conducted by the Sheriff's Department and some interviews conducted by an investigator hired by the suspect's attorney; criminal history; memoranda; e-mails; letters; and other documents.
Rose's letter said that the prosecutor's file included 44 pages of police reports and 139 pages of transcripts of witness interviews conducted by the sheriff's office and held by the prosecutor. These particular documents, he said, would be withheld as work product exempt from disclosure under the Public Records Act because they pertained to "the decision of whether or not to charge this matter." Rose quoted from Limstrom v. Ladenburg, 136 Wash.2d 595, 611, 963 P.2d 869 (1998) to the effect that the Public Records Act exempts from disclosure an attorney's gathering of factual items and documents "unless the person requesting disclosure demonstrates substantial need and an inability, without undue hardship, to obtain the documents or items from another source." He said that a "showing of an inability to procure these items from another source cannot be made in this case because the Pierce County Sheriff's Department also maintains these records." Rose noted that the non-exempt records totaled 172 pages and said they were ready to be released upon payment of copying and postage charges. Koenig did not pick up the 172 pages from the prosecutor's office at this time.
¶ 6 A year later, on January 2, 2007, Koenig filed suit against Pierce County. He complained that the County had violated RCW Chapter 42.56 by withholding records that are not exempt from public disclosure. The complaint alleged that Koenig had submitted a request to the prosecutor's office in December 2005 for the records associated with the investigation of Gulla. It did not mention his correspondence with the sheriff's office. A letter sent by Koenig to Rose on March 26, 2007 indicates that Koenig sent the complaint out to be served on that date.[1]
¶ 7 Koenig's letter to Rose on March 26, 2007 requested the 172 pages of records from the prosecutor's office that Rose had agreed to provide in his letter of January 3, 2006. Koenig asked Rose to coordinate with the sheriff's office regarding the withheld records:
Your letter dated January 3, 2006, also states that you have two batches of documents (44 pages and 139 pages respectively) that you declined to provide to Mr. Koenig because these records are available from the Pierce County Sheriff. I have requested those records from the Sheriff, and a copy of my letter is enclosed. Please coordinate with the Sheriff's office to ensure that my client receives all of the records that you contend are available from the Sheriff's office.
Koenig also asked for an exemption log of the records withheld by the prosecuting attorney.
¶ 8 Also on March 26, 2007, Koenig wrote to the sheriff's office. He enclosed a copy of Rose's letter of January 3, 2006. He characterized Rose's letter as refusing to provide certain records "based on the fact that the same records are available from the Sheriff's office." He asked the sheriff to send him the two sets of records withheld by Rose's letter, i.e., 44 pages of police reports and 139 pages of witness transcripts.
¶ 9 On March 29, 2007, Adams responded to Koenig's March 26 letter on behalf of the Sheriff: "I am not sure that I can necessarily `match up' what may be in the files of the Prosecuting Attorney and what is in the records of the Sheriff's investigation. So, when *426 you say that you want only 44 pages, I am unsure what he is talking about." Adams said, "I am going to order a copy of this incident number from the records custodian and then will advise you as to what is in our custody. Once you have that information you should be able to assure that your request matches with what records are in our possession." On April 2, 2007, Adams sent Koenig a list describing the 184 pages of documents in the sheriff's investigative file concerning the Gulla incident. He asked Koenig to let him know which records he would like to obtain.
¶ 10 On April 4, 2007, Rose responded to Koenig's March 26 letter by providing 188 pages of records. Rose reiterated that certain documents were not being provided because they were exempt as work product. Rose declined Koenig's request to coordinate with the sheriff's department, citing Limstrom: "the court in Limstrom v. Ladenburg, 136 Wash.2d 595, 604, 963 P.2d 869 (1998), held that an agency does not have to go outside its own records or resources to try to locate records."
¶ 11 On April 16, 2007, Rose sent Koenig a detailed log identifying the records that had been withheld by the prosecutor's office by number of pages, subject, title, custodian, date, and basis for exemption. Among the records listed was a 17-page "Script of tape-recorded statement from Tara Kelly," created June 21, 2004, withheld as work product.
¶ 12 On May 10, 2007, Adams wrote to Koenig saying that he had identified the sheriff's records relating to the investigation of Gulla. Koenig sent a check for copying costs, and on May 29, 2007, Koenig received 184 pages of records from the sheriff's office. It appears that this collection of records was virtually identical to the records Koenig received from LESA in February 2006.
¶ 13 On March 10, 2008, Pierce County sent a discovery request to Koenig asking him to "identify with specificity each document withheld from Plaintiff that is the subject of your complaint but which you claim was not made available to you by the Pierce County Sheriff's Department or the Law Enforcement Support Agency." On March 12, 2008, Koenig provided a response: "Koenig does not have a copy of the Tara Kelly statement. That document has been wrongfully withheld from Koenig by the County."
¶ 14 On March 14, 2008, Adams wrote to Koenig on behalf of the sheriff's department, saying he had learned that the Tara Kelly statement and certain other documents not previously provided had been retained in the personal file of the lead detective. He enclosed 212 pages of records found in the private investigatory file, including the Kelly statement.
¶ 15 Two weeks later, on March 28, 2008, Pierce County filed a motion for summary judgment, relying on Limstrom and arguing that the documents withheld by the prosecutor's office were all privileged work product and protected from disclosure. In response, Koenig sought partial summary judgment on his allegation that "the County" violated the Public Records Act by wrongfully withholding non-exempt public records including the Kelly statement, and by failing to properly identify the withheld records. Koenig also argued that it was a violation of the Public Records Act for the prosecutor's office to refuse to coordinate its response with the sheriff's office.
¶ 16 On May 9, 2008, the trial court entered an order granting Pierce County's motion for summary judgment and dismissing Koenig's claims with prejudice. Koenig moved for reconsideration. He argued that Limstrom, a plurality decision, was not binding precedent. On May 30, 2008, the court denied the motion.
¶ 17 Koenig appeals.

WORK PRODUCT
¶ 18 Koenig contends it was unlawful for "the County" to invoke the work product exemption as a basis for the prosecutor's withholding of investigative records.
¶ 19 Judicial review of challenged agency actions under the Public Records Act is de novo. RCW 42.56.550(3); Daines v. Spokane County, 111 Wash.App. 342, 346, 44 P.3d 909 (2002).
*427 ¶ 20 "Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt" from public disclosure. RCW 42.56.290 (formerly RCW 42.17.310(1)(j)). This "work product" exemption relies on the rules of pretrial discovery to define the parameters of the work product rule for purposes of applying the exemption. Dawson v. Daly, 120 Wash.2d 782, 789-90, 845 P.2d 995 (1993).
¶ 21 Washington has two discovery rules: CR 26 and CrR 4.7. Each rule differently defines the scope of work product. Limstrom was a case of first impression that addressed which discovery rule applies to the exemption under RCW 42.56.290.
¶ 22 In Limstrom, the lead opinion of four justices held that "the pretrial discovery rules referred to in RCW 42.17.310(1)(j) are those set forth in the civil rules for superior court, CR 26." Limstrom, 136 Wash.2d at 609, 963 P.2d 869. The lead opinion interpreted the civil rule, CR 26(b)(4), as including within the definition of work product "formal or written statements of fact, or other tangible facts, gathered by an attorney in preparation for or in anticipation of litigation." Limstrom, 136 Wash.2d at 611, 963 P.2d 869. Such work product as defined under the civil rule is protected from disclosure unless the requester is able to demonstrate a substantial need and an inability to obtain the documents from other sources. CR 26(b)(4); Limstrom, 136 Wash.2d at 611, 963 P.2d 869. Justice Madsen joined the lead opinion "in the result." Limstrom, 136 Wash.2d at 617, 963 P.2d 869.
¶ 23 The dissenting opinion signed by the remaining four Justices stated that the criminal discovery rule, not CR 26, should apply to determine whether the requested materials were discoverable under the Public Records Act. Limstrom, 136 Wash.2d at 617, 963 P.2d 869. The criminal discovery rule is narrower than the civil rule in defining work product. Documents are generally protected from disclosure under this rule only "to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies." CrR 4.7(f)(1).
¶ 24 The Tara Kelly statement is a written transcript of Tara Kelly's oral statement taken by a detective in the Pierce County Sheriff's Department. It does not contain opinions, theories, or conclusions of any attorneys, so under the criminal discovery rule it would be subject to disclosure. But it would not be subject to disclosure under the civil rule because it is a factual document gathered by the prosecutor in anticipation of litigation. Therefore, under the lead plurality opinion in Limstrom, the Kelly statement is exempt from disclosure under the Public Records Act.
¶ 25 Koenig argues that plurality opinions like Limstrom are not binding, citing Robinson v. City of Seattle, 102 Wash.App. 795, 805 n. 12, 10 P.3d 452 (2000). In Robinson, this court refused to follow a recent plurality opinion that concluded the taxpayers lacked standing to sue the defendant city. The court instead followed a previous opinion that recognized taxpayer standing.
¶ 26 The question here is whether the prosecutor's office committed a Public Records Act violation by deciding to follow the civil discovery rule in reliance on the plurality opinion in Limstrom. A plurality opinion is often regarded as highly persuasive, even if not fully binding. See Texas v. Brown, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (holding that while one particular plurality opinion was "not a binding precedent, as the considered opinion of four Members of this Court it should obviously be the point of reference for further discussion of the issue").
¶ 27 Our Supreme Court itself has cited the lead opinion in Limstrom as an interpretation by "this court", and saying "we have held," even while recognizing it as a plurality opinion. See Soter v. Cowles Publishing Co., 162 Wash.2d 716, 733, 740, 174 P.3d 60 (2007). The dissenting opinion in Limstrom does not enjoy the same status. The lead opinion has extra weight considering that Justice Madsen concurred with the result (holding most records exempt), whereas the result of the dissenting opinion would have *428 been to compel disclosure of all records. Koenig has not identified any authority he believes compelled the prosecutor to disclose documents such as the Kelly statement that were gathered in anticipation of litigation. Unlike in Robinson, there was no opinion other than the Limstrom lead opinion that the prosecutor might have chosen to follow.
¶ 28 We conclude it was not a violation of the Public Records Act for the prosecutor's office to withhold records based on the lead opinion in Limstrom.

COORDINATION OF RESPONSES
¶ 29 Koenig contends Pierce County further violated the Public Records Act by failing to coordinate the responses of the prosecutor and the sheriff. His argument assumes that the County as a whole owes a duty to supervise its departments so that they work together in responding to record requests. For this argument, Koenig relies on the statutory definition of "agency."
"Agency" includes all state agencies and all local agencies. "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.
RCW 42.56.010(1). The plain language of this definitional statute, however, equally defines various governmental entities as agencies without establishing any obligatory relationships between them.
¶ 30 Koenig also relies on the Court of Appeals opinion in Yousoufian v. King County Executive, 114 Wash.App. 836, 60 P.3d 667 (2003). But what Koenig cites from in Yousoufian is actually the trial court's description of a violation as resulting from "poor communication between county departments." Yousoufian, 114 Wash.App. at 846, 60 P.3d 667. This is not an appellate holding creating the open-ended duty to coordinate that Koenig wishes to impose.
¶ 31 Koenig also relies on RCW 42.56.580. Under this section of the statute, an agency is to appoint and publicly identify a contact person who has the duty of overseeing the agency's compliance with the requirements for disclosure in the Public Records Act. If the Act elsewhere required different agencies to coordinate their responses, it would be the duty of the contact person to oversee their coordination. But there is no such provision elsewhere in the Act. Koenig cites model rules prepared by the Attorney General. These are nonbinding. WAC 44-14-00003.
¶ 32 If we were to hold that the prosecutor's office has a duty to inquire with other Pierce County departments concerning a record request directed only to the prosecutor's office, the effect would be that no department within the state or municipal government could deny a request for public records without having first canvassed all the other departments within that unit of government. The statute does not impose this burden. The Public Records Act "does not require... an agency to go outside its own records and resources to try to identify or locate the record requested." Limstrom, 136 Wash.2d at 604 n. 3, 963 P.2d 869.
¶ 33 It would be particularly unreasonable to hold an agency responsible for failing to coordinate unless that agency actually knew another agency had received a similar request. Koenig did not mention in his initial letter to the prosecutor that he had made a similar request to the sheriff's office. On behalf of the prosecutor, Rose responded to the initial letter and explained that certain records were being withheld as work product under Limstrom. He noted that the work product exemption was applicable unless the requester demonstrated an inability to obtain the documents from another source. According to Rose's letter, Koenig would not be able to make this showing because the records were available from the sheriff. When Koenig did not dispute this statement, the prosecutor's office had no reason to give the matter any further attention.
¶ 34 Koenig wrote to Rose again on March 26, 2007. This time, he specifically requested Rose to "coordinate with the *429 Sheriff's office to ensure that my client receives all of the records that you contend are available from the Sheriff's office." This letter was merely a request; it did not impose upon the prosecutor's office an obligation to "coordinate." Where the work product exemption is applicable, the office invoking it need not take steps to provide the documents unless the requester makes an affirmative showing of an inability to obtain the same documents elsewhere. CR 26(b)(4); Limstrom, 136 Wash.2d at 611, 963 P.2d 869. Koenig's request that Rose "coordinate with the Sheriff's office" was an attempt to shift the burden to the prosecutor to show that the withheld documents could be obtained from the sheriff, without any showing by Koenig that he had tried and failed to get them from the sheriff. We see no basis in the Public Records Act to enforce a request that a prosecutor and sheriff, officials who have separate missions and responsibilities, submit their investigative files to each other for examination to ensure that they "match up."
¶ 35 The theory of Koenig's case as shown by his complaint and briefs is that the County improperly withheld records in the possession of the prosecuting attorney. Koenig could and did request investigative records from the sheriff as well as from the prosecutor. Koenig has not shown that the delay he experienced in obtaining the Tara Kelly statement from the sheriff's office was attributable to the prosecutor. The prosecutor was entitled to invoke the work product exemption with respect to the Kelly statement and other documents the prosecutor had gathered in anticipation of litigation. We conclude Pierce County did not violate the Public Records Act by failing to ensure that the prosecutor's office and the sheriff's office coordinated their responses to Koenig's request for investigative records.

COUNTY'S FAILURE TO IDENTIFY EXEMPT RECORDS
¶ 36 Koenig also contends the prosecutor violated the Public Records Act by failing to properly identify the withheld records.
¶ 37 The Public Records Act requires that an agency must provide a statement of explanation when a records request is refused. RCW 42.56.210(3) (formerly RCW 42.17.310(4)). "In order to ensure compliance with the statute and to create an adequate record for a reviewing court, an agency's response to a requester must include specific means of identifying any individual records which are being withheld in their entirety." Progressive Animal Welfare Society v. University of Washington (PAWS), 125 Wash.2d 243, 271, 884 P.2d 592 (1994). A footnote in PAWS describes the type of the identifying information that should be provided to the requester:
The identifying information need not be elaborate, but should include the type of record, its date and number of pages, and, unless otherwise protected, the author and recipient, or if protected, other means of sufficiently identifying particular records without disclosing protected content. Where use of any identifying features whatever would reveal protected content, the agency may designate the records by a numbered sequence.
PAWS, 125 Wash.2d at 271 n. 18, 884 P.2d 592 (emphasis added).
¶ 38 The letter Rose sent to Koenig on behalf of the prosecutor satisfied the statute by explaining that a certain number of pages of police reports and witness interview transcripts were being withheld as work product because they pertained to the charging decision. The prosecutor's office did not have to provide further identifying information because to do so would have disclosed protected content. The reason documents gathered in anticipation of litigation are protected under the civil discovery rules is because disclosing the identity of the documents reveals "what information the attorney deemed particularly important and, conversely, what the attorney did not find important." Soter, 162 Wash.2d at 743-44, 174 P.3d 60. Identifying the subject matter, date, author and other similar features of the police reports and transcripts would have permitted Koenig, who had access to the sheriff's investigative records, to compare them to the prosecutor's log of withheld documents and thereby identify which documents the prosecutor reviewed in the *430 process of making the decision not to charge Gulla. This is precisely the information the prosecutor was entitled not to disclose. It so happened that the prosecutor's office did provide an exemption log to Koenig after he filed suit in 2007. It appears that receiving this log was the event that enabled Koenig to identify the Tara Kelly statement as an investigative record he had not received from the sheriff. We do not know why the prosecutor's office chose to provide an exemption log when it was under no duty to do so. But whatever the reason, the fortuity of receiving an exemption log from the prosecutor's office in 2007 does not provide Koenig with a cause of action for the prosecutor's failure to provide him with an exemption log in 2005 when he first requested documents.
¶ 39 Rose's letter of January 3, 2006 stated that the withheld records consisted of 44 pages of police reports and 139 pages of witness interviews. Koenig has not argued that this level of specificity is an inadequate record for appellate review and we find that it is sufficient for our purposes. We therefore conclude that the prosecutor's office did not fail to properly identify exempt work product.
¶ 40 Because Koenig has not prevailed, we deny his request for an award of penalties and fees under RCW 42.56.550(4).
¶ 41 Affirmed.
WE CONCUR: SCHINDLER, C.J., and AGID, J.
NOTES
[1] A third deputy prosecutor, Daniel Hamilton, appeared to defend Pierce County in this litigation.