2015 OCT 19 AM 9: 24

COURT OF APPEALS DIV I
STATE OF WASHINGTON

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FREDERICK and ANNALESA
THOMAS,

    Appellants,

    v.

PIERCE COUNTY PROSECUTING
ATTORNEY'S OFFICE,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 73360-5-I

UNPUBLISHED OPINION

FILED:  October 19, 2015

DWYER, J. — Frederick and Annalesa Thomas's son was killed in an officer-involved shooting.  Before a charging decision was made in connection with the shooting, the Thomases made a public records request to the Pierce County Prosecuting Attorney's Office (PCPAO) for all documents related to the shooting.  The PCPAO denied this request, claiming that the requested records were exempt from disclosure pursuant to RCW 42.56.240(1), the law enforcement exemption, and CR 26, the work product rule.  The Thomases brought suit, alleging that the denial was improper.  On cross motions for summary judgment, the trial court granted summary judgment in the PCPAO's favor.  We now affirm.

I

In the early morning hours of May 24, 2013, after a lengthy standoff, Officer Brian Markert shot and killed Leonard Thomas. Significant evidentiary disputes exist between the parties with regard to the circumstances of the shooting but, as the trial court correctly observed in its order on summary judgment, "very few of [these disputes] are material to the questions presented in this summary judgment motion." In sum, the Thomases believe that the police shot Thomas without good reason, while the PCPAO asserts that the police had lawful cause to shoot Thomas. The police believed that Thomas was mentally unstable and was holding his child as a shield or hostage during a tense standoff. They claim the situation was highly unstable and dangerous. The Thomases describe a much a different situation, and argue that the police overreacted to a situation about which they did not know enough.

On May 29, 2013, five days after the shooting, the Thomases made their first cluster of public records requests pursuant to Washington's Public Records Act (PRA), 42.56 RCW, seeking records from the various law enforcement agencies that were investigating the shooting (but not the PCPAO). With one exception, the agencies responded to the Thomases' request by denying access to the records based on the fact that there was an "open and active investigation." The agencies asserted that they were conducting investigations into whether any officer should be charged with a criminal offense arising out of the standoff or the shooting.

On August 5, the Thomases sent the PCPAO a letter requesting, "all files,

records, and documents containing any information regarding the shooting of Leonard Thomas." The subject line of the letter identified it as a "public records request."[1]

On August 28, 2013, Fife Police Detective Thomas Gow, the lead detective investigating the shooting of Leonard Thomas, presented a summary of his investigation to the PCPAO.[2] Approximately one week prior to delivering the summary, Detective Gow provided the entirety of his investigatory materials to the PCPAO.

On September 3, 29 days after the Thomases' public records request, the PCPAO denied the request, setting forth two reasons for the denial. First, it denied the request pursuant to RCW 42.56.240(1), asserting that the records were "essential to effective law enforcement." Second, the PCPAO denied the request because, it asserted, the materials in the PCPAO's file were gathered in anticipation of litigation and, thus, constituted work product.

On September 4, the Pierce County Prosecuting Attorney announced his finding that the shooting of Leonard Thomas was legally justifiable and that the PCPAO would not file criminal charges against any of the law enforcement officers involved.

The Thomases did not seek to clarify PCPAO's denial of their PRA request between September 3 and October 3, nor did they explain to the PCPAO why the denial of these records constituted a substantial hardship or

---

[1] This letter was received by the PCPAO on August 6. Thus, the parties sometimes refer to this request as the August 6 request. We will refer to it by the date that the letter was sent, August 5.

[2] Felony crimes investigated by the Fife Police Department are almost universally referred to the PCPAO for charging decisions.

communicate why they could not obtain the records elsewhere. In fact, they had no communication whatsoever with the PCPAO during this period.

On October 3, the Thomases sent a letter to the PCPAO in which they acknowledged receipt of the PCPAO's denial of their August 3 records request. The letter went on to remind the PCPAO that, the day following the denial, the Prosecutor had ruled the Thomas shooting justifiable. The Thomases then made the following request:

> Would you please clarify and/or confirm that your statement of September 3, 2013 remains in effect and that the Prosecuting Attorney's Office will not release any documents pursuant to our August 6, 2013 request, notwithstanding the decision that no criminal charges will be filed against any of the officers involved in that matter?

The PCPAO responded to this letter on October 7, stating,

> [O]ur September 3, 2013 letter remains in effect and . . . the Prosecutor's Office will not release any documents pursuant to your August 6, 2013 request. . . .
>
> Please see page two of our September 3, 2013 letter to you which states in part, "the work product privilege continues even after the prospect of litigation has terminated."

The records requested by the Thomases consisted entirely of police reports and other documents generated by law enforcement officials that were collected by the PCPAO in preparation for making its decision regarding whether to file criminal charges against any law enforcement officer in the Leonard Thomas shooting.[3] Keith Barnes, an investigator with the PCPAO, accomplished

---

[3] In its briefing, the PCPAO confuses the issue on this point. The Thomases make clear that, at least at this stage of the litigation, they are only challenging the denial of records that the prosecutor's investigator, Keith Barnes, took no part in creating.
  There is no confusion about the scope of [the Thomases'] work product challenge—it encompasses only those documents created by third-party police

-4-

the collection of these documents by using a law enforcement records computer system that allowed him to access all of the documents related to the investigation. Without making a specific request therefor, Barnes also received a binder containing "a complete copy of the Fife Police Department's investigation file regarding the . . . shooting" from Gow. By all accounts, Barnes engaged in no culling or analyzing when gathering this material. To the contrary, pursuant to the strict rules requiring the gathering of all investigative materials from every agency working on an investigation,[4] he simply gathered every document produced by any law enforcement agency that worked on the investigation and converted it into the PCPAO's file.

The documents that Barnes collected for the PCPAO's file are the documents the Thomases sought in their PRA request.

## II

The Thomases contend that the PCPAO violated the PRA by denying them access to the records they requested. The PCPAO contends to the contrary, asserting that the requested records were exempt from disclosure under both the law enforcement exemption (RCW 42.56.240(1)) and the work product rule (CR 26). If the PCPAO was correct regarding the applicability of

---

agencies where the [PCPAO's] Investigator (Keith Barnes) played no role, except to rotely move the reports or witness interviews from one place to another. *See* [Clerk's Papers (CP)] CP 131, 134-35, 199. As the trial court accurately found, "In this case, the prosecutors literally just requested all documents from all law enforcement agencies involved in the shooting, and then placed those documents into their files." CP 220. As before the trial court, [the Thomases] do[] not seek production of documents that Mr. Barnes created or witness interviews he may have conducted. For purposes of this appeal, the only records at stake are those created independent of Mr. Barnes.
Appellants' Reply Br. at 6 (footnote omitted).
    [4] See CrR4.7; Brady v. Maryland. 373 U.S. 83, 87, 83 S. Ct 1194, 10 L. Ed. 2d 215 (1963); In re Brennan, 117 Wn. App. 797, 802-03, 72 P.3d 182 (2003).

either exemption, then the records were properly withheld, and there was no PRA violation.[5]

Before we can determine the applicability of the claimed exemptions, we must resolve the parties' dispute regarding which PRA request is herein at issue.

A

We review de novo a trial court's order granting summary judgment. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 497, 210 P.3d 308 (2009) (citing Biggers v. City of Bainbridge Island, 162 Wn.2d 683, 693, 169 P.3d 14 (2007)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). In determining whether a genuine issue of material fact exists, we view all facts and draw all reasonable inferences in favor of the nonmoving party. Owen, 153 Wn.2d at 787 (citing Ruff v. King County, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)).

> The function of a summary judgment proceeding is to *determine whether a genuine issue of material fact exists. It is not . . . to resolve issues of fact or to arrive at conclusions based thereon.* State ex rel. Zempel v. Twitchell, 59 Wn.2d 419, 424-25, 367 P.2d 985 (1962). Consequently, . . . findings of fact and conclusions of law entered [on summary judgment] are superfluous and may not be considered to the prejudice of the [non-prevailing party].

Duckworth v. City of Bonney Lake, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978).

---

[5] The PRA is violated when an agency improperly withholds records from a requestor. It is the fact that a record was withheld when it should have been made available that constitutes a violation. RCW 42.56.550.

B

The parties herein dispute the effect of the Thomases' October 3 letter. The Thomases contend that this letter constituted a new records request. The PCPAO claims that the wording of the letter plainly sets forth a request for the PCPAO to clarify its response to the Thomases' August 5 request. Thus, the PCPAO asserts, the August 5 request is the only request at issue. The PCPAO has the better of this dispute.

The PRA is a strongly worded mandate for broad disclosure of public records. We liberally construe the act, and narrowly construe its exemptions in favor of disclosure. Soter v. Cowles Publ'g. Co.. 162 Wn.2d 716, 731, 174 P.3d 60 (2007); accord RCW 42.56.030. However, "the P[R]A 'only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records.'" Wood v. Lowe, 102 Wn. App. 872, 876-77, 10 P.3d 494 (2000) (quoting Bonamy v. City of Seattle, 92 Wn. App. 403, 409, 960 P.2d 447 (1998)). A "'specific request for records'" occurs when "the person requesting documents from an agency state[s] the request *with sufficient clarity to give the agency fair notice* that it had received a request for a public record."[6] Wood, 102 Wn. App. at 878 (emphasis added).

---

[6] The fair notice requirement is one of the few burdens placed on requestors. At oral argument, counsel for the Thomases suggested, in effect, that we eliminate this threshold requirement and, instead, treat a lack of fair notice as a mitigating factor in assessing statutory penalties. In support of this argument, counsel cited Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 229 P.3d 735 (2010), which included the lack of clarity regarding the subject of a request in a list of mitigating factors when assessing penalties. But Yousoufian addressed a lack of clarity with regard to precisely which records were being requested, not regarding whether a records request was being made at all. 168 Wn.2d at 454. This is a crucial difference.

If it is clear that a request has been made, even if the subject of the request is unclear, the agency has been notified that it must engage in an interactive process with the requestor to clarify and respond to the request. Hobbs v. Wash. State Auditor's Office, 183 Wn. App. 925, 941

In other words, at a minimum, the PRA "require[s] that requests be recognizable as PRA requests." Beal v. City of Seattle, 150 Wn. App. 865, 876, 209 P.3d 872 (2009). However, "fair notice" does not require the requestor to cite the PRA in his request. Wood, 102 Wn. App. at 878. Moreover, "there is no official format for a valid P[R]A request." Hangartner v. City of Seattle, 151 Wn.2d 439, 447, 90 P.3d 26 (2004). In determining whether a purported request provided the target agency sufficient notice that it was a records request, we look to the information included on the face of the "request." See Koenig v. City of Des Moines, 158 Wn.2d 173, 183-84, 142 P.3d 162 (2006) (holding that, in order to promote uniform disclosure, courts must focus on the information available within the four corners of the document in determining whether an exemption applies to a given record).

The relevant part of the October 3 letter is as follows:

> Would you please clarify and/or confirm that your statement of September 3, 2013 remains in effect and that the Prosecuting Attorney's Office will not release any documents *pursuant to our August 6, 2013 request*, notwithstanding the decision that no criminal charges will be filed against any of the officers involved in that matter?

(Emphasis added.)

The trial court made two observations regarding this request: "(1) The October 3, 2013 letter was unclear, [u]nartful, and lent itself to confusion; but, (2) Any such request related to records under the PRA should have been broadly

---

n.12, 335 P.3d 1004 (2014). Where an agency has been alerted to the fact that its statutory responsibilities have been triggered, it is reasonable to hold the agency accountable for its responsiveness. By contrast, where an agency has *not* been so alerted and, moreover, it is within the requestor's power to put the agency on notice, it is unreasonable to hold the agency responsible for its lack of response. The fair notice requirement is an important aspect of PRA jurisprudence.

interpreted per the intent of the legislature." It then concluded "that the October 3, 2013 letter constituted a subsequent PRA request."

The trial court's conclusion that the October 3 letter stated a records request with sufficient clarity to give the PCPAO fair notice that its PRA responsibilities had been triggered is contrary to the record. On its face, the October 3 letter did not state a new records request. The letter did not declare itself to be a PRA request, nor did it otherwise communicate that its purpose was to request records. Instead, the letter clearly requested a clarification or confirmation from the PCPAO regarding its response to an earlier records request.[7] In order to reach the conclusion suggested by the Thomases, the law would have to require that the PCPAO read ambiguity into the unambiguous letter. The law does not so require.

Moreover, the Thomases' assertion that the October 3 letter really was intended as a new records request is undermined both by the sharp contrast between the Thomases' October 3 and August 5 letters and by their own treatment of the letter at the time it was sent and for some time thereafter.[8] Unlike their October 3 letter, the Thomases' August 5 letter clearly communicated that it was a records request. In fact, the August 5 letter stated that it was a "public records request" both in the letter's subject line and in the first sentence of

---

[7] "[P]ursuant to our August 6, 2013 request . . . ."

[8] In turning to other interactions between the parties, we apply an interpretive approach from contract law.

> Courts faced with questions of contract interpretation must discern the intent of the contracting parties, and may consider evidence extrinsic to the contract itself for that purpose . . . . [S]uch evidence may include . . . the circumstances under which the [contract] was made [and] the parties' conduct thereafter.

Hearst Commc'ns, Inc. v. Seattle Times Co., 120 Wn. App. 784, 791, 86 P.3d 1194 (2004) (citing Berg v. Hudesman, 115 Wn.2d 657, 667–68, 801 P.2d 222 (1990)), aff'd, 154 Wn.2d 493, 115 P.3d 262 (2005).

the body text. The Thomases' demonstrated ability to state a clear records request suggests that, contrary to their present assertion, they did not intend for the October 3 letter to be a new PRA request.

Furthermore, until the underlying litigation had progressed significantly, not even the Thomases treated the October 3 letter as if it were a separate request. The Thomases did not, for example, reply to the PCPAO's response to their October 3 letter by either clarifying that they were making a new request or accepting the response as a denial and communicating a substantial need for the records. In terms of the underlying litigation, the Thomases did not refer to the October 3 letter as a separate request in their complaint. Notably, the Thomases also did not list the October 3 letter as a request in response to an interrogatory from the PCPAO asking them to "[l]ist all public records requests to every law enforcement or governmental agency from which plaintiffs . . . have sought documents in connection with the incident involving Leonard Thomas of May 24, 2013."[9] In fact, the first time that the Thomases averred that the October 3 letter was a separate PRA request was in their response to the PCPAO's motion for summary judgment.[10]

In short, we are persuaded—by the content of the October 3 letter itself, the contrast between this letter and the Thomases' August 5 request, and the Thomases' own treatment of the October 3 letter—that the October 3 letter would

---

[9] The Thomases listed their responses chronologically. Proximate to October 3, they listed only the following requests:
8/5/2013 PRA Request to Pierce County Prosecutor
12/2/2013 PRA Request to Pierce County Prosecutor
[10] Therein, they refer for the first time to "both the[ir] August 5 and October 3 PRA requests."

not have put the PCPAO on notice that it had received a records request and, thus, did not constitute a new request under the PRA.

In their appellate reply brief, the Thomases assert that "only" their "October 3, 2013 request is at issue." Appellants' Reply Br. at 3. Thus, our determination that, in fact, there was no October 3 request is dispositive of the Thomases claim regarding whether records were improperly held in response to that "request." For the sake of clarity and completeness, we nevertheless address the propriety of withholding the records pursuant to the exemptions claimed by the PCPAO, which is the primary focus of the parties' appellate briefing.

C

In its motion for summary judgment, the PCPAO contended that the requested records were exempt under the effective law enforcement exemption. This is so, it asserted, because—at the time of the request—the records were part of an open, ongoing investigation. The PCPAO is correct.

Once documents are determined to be within the scope of the PRA, disclosure is required unless a specific statutory exemption applies. Dawson v. Daly, 120 Wn.2d 782, 789, 845 P.2d 995 (1993); accord RCW 42.56.070(1). The burden of proof is on the party seeking to prevent disclosure to show that an exemption applies. Limstrom v. Ladenburg, 136 Wn.2d 595, 612, 963 P.2d 869 (1998); accord RCW 42.56.540, .550(1).

The effective law enforcement exemption to the PRA provides that the following information is exempt from disclosure:

Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.56.240(1).

The statute first requires that the information be compiled by law enforcement. "[A]ny documents placed in [a law enforcement] investigation file satisfy the requirement that the information is compiled by law enforcement." Newman v. King County, 133 Wn.2d 565, 573, 947 P.2d 712 (1997). This is so even if the documents "remain available in their original and unprotected capacity." Newman, 133 Wn.2d at 573. The statute also requires that the documents be essential to effective law enforcement.

Typically, the agency claiming exemption must prove that nondisclosure of the particular requested documents is essential to effective law enforcement. However, [our Supreme Court] has held that the effective law enforcement exemption applies categorically in a narrow set of circumstances.

Sargent v. Seattle Police Dep't, 179 Wn.2d 376, 387, 314 P.3d 1093 (2013).

To qualify for a categorical exemption, documents must be part of an open, ongoing investigation related to law enforcement proceedings. Koenig v. Thurston County, 175 Wn.2d 837, 843, 287 P.3d 523 (2012) (The investigation must be "'one designed to ferret out criminal activity or to shed light on some other allegation of malfeasance.'" (quoting Columbian Publ'g Co. v. City of Vancouver, 36 Wn. App. 25, 31, 671 P.2d 280 (1983))); Newman, 133 Wn.2d at 573 (an investigation must be "leading toward an enforcement proceeding"). The exemption ceases to apply once an investigation is ended. See Cowles Publ'g

- 12 -

Co. v. Spokane Police Dep't, 139 Wn.2d 472, 479, 987 P.2d 620 (1999) ("[W]e hold in cases where the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure of all records in the police investigative file."); accord Sargent, 179 Wn.2d at 389 (exemption did not apply where department had concluded its investigation and had referred requestor's case to the prosecutor for a charging decision).

This exemption applies to prosecutors' investigative files as well. Cowles Publ'g. Co. v. Pierce County Prosecutor's Office, 111 Wn. App. 502, 508, 45 P.3d 620 (2002). However, "a document in a prosecutor's file can qualify as an investigative record [only if it is] part of an investigation that the prosecutor conducts." Koenig, 175 Wn.2d at 847. This includes documents that are part of the investigative process leading to a charging decision but not, for example, documents that are relevant to only sentencing proceedings. Compare Cowles, 111 Wn. App. at 504 (mitigation package is exempt because its purpose is to assist the prosecutor in deciding whether to seek the death penalty—by filing a notice of special proceedings—which is a charging decision), with Koenig, 175 Wn.2d at 846, 848 (victim impact statement is not exempt because "[i]t is considered after the charging phase of a case is closed and the investigation is complete"; SSOSA evaluation also is not exempt because the prosecutor "is not conducting an investigation but is merely taking the SSOSA evaluation into consideration while providing input to the court on a decision the court must make").

The Thomases' argument regarding the law enforcement exemption has evolved over the course of the litigation. On appeal, because they choose to focus instead on their October 3 letter, the Thomases do not at all address the applicability of this exemption to their August 5 request. In their complaint, however, the Thomases did challenge the PCPAO's response to their August 5 request. Their argument at that time was as follows:

> Because the Prosecutor announced his decision on September 4, 2013 . . . the Prosecutor had, at the time of the request denial the day before, already finished any investigation. Thus, when Defendant's Public Records Officer denied Plaintiffs' records request on September 3, 2013, there was no longer an open and active investigation, making the statutory exemption under RCW 42.56.240(1) inapplicable.

This argument fails because it relies on (1) the unsupported factual assertion that the PCPAO's charging decision was finalized at some (unidentified) point before the decision was announced, and (2) an unsupported legal distinction between the time when the prosecutor knows, for him- or herself, what charging decision he or she intends to make and the time when that decision is actually made (presumably by filing charges or announcing that no charges will be filed).

At the time of the August 5 request, the records were part of an open and ongoing investigation being conducted by the PCPAO. Therefore, they were properly withheld pursuant to the law enforcement exemption.[11]

---

[11] There is no dispute that, if there were an October 3 request, this exemption would not apply thereto, because the PCPAO was not engaged in an open and ongoing investigation at that time. This result presumably explains why the Thomases shifted the focus of their argument from the August 5 request to the October 3 letter.

D

The PCPAO also contends that the requested records were exempt as work product. This is so, it asserts, because they are factual records, gathered by the PCPAO in preparation for or in anticipation of litigation. For their part, the Thomases contend that this court need not—and should not—follow the precedent upon which the PCPAO relies, namely Limstrom. The PCPAO is correct.

This court faced a challenge very similar to that made by the Thomases in Koenig v. Pierce County, 151 Wn. App. 221, 211 P.3d 423 (2009), review denied, 168 Wn.2d 1023 (2010). Therein, the requestor alleged that the agency wrongfully withheld records related to a completed criminal investigation under the guise of the work product exemption. The records that allegedly were wrongfully withheld included a written transcript of a witness's oral statement taken by a law enforcement officer. The Koenig court's analysis of the work product exemption as applied in Limstrom applies equally to this case.[12]

The Koenig court began by outlining the applicable law, including Limstrom:

> "Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt" from public disclosure. RCW 42.56.290 (formerly RCW 42.17.310(1)(j)). This "work product" exemption relies on the rules of pretrial discovery to define the parameters of the work product rule for purposes of applying the exemption. Dawson v. Daly, 120 Wn.2d 782, 789–90, 845 P.2d 995 (1993).

---

[12] Indeed, at oral argument, the Thomases' counsel conceded that this case presents the same question as was presented in Koenig. Oral argument at 6:40.

Washington has two discovery rules: CR 26 and CrR 4.7. Each rule differently defines the scope of "work product." Limstrom was a case of first impression that addressed which discovery rule applies to the exemption under RCW 42.56.290.

In Limstrom, the lead opinion of four justices held that "the pretrial discovery rules referred to in RCW 42.17.310(1)(j) are those set forth in the civil rules for superior court, CR 26." Limstrom, 136 Wn.2d at 609. The lead opinion interpreted the civil rule, CR 26(b)(4), as including within the definition of "work product" "formal or written statements of fact, or other tangible facts, gathered by an attorney in preparation for or in anticipation of litigation." Limstrom, 136 Wn.2d at 611. Such work product as defined under the civil rule is protected from disclosure unless the requester is able to demonstrate a substantial need and an inability to obtain the documents from other sources. CR 26(b)(4); Limstrom, 136 Wn.2d at 611. Justice Madsen joined the lead opinion "in the result." Limstrom, 136 Wn.2d at 617.

The dissenting opinion signed by the remaining four justices stated that the criminal discovery rule, not CR 26, should apply to determine whether the requested materials were discoverable under the Public Records Act. Limstrom, 136 Wn.2d at 617. The criminal discovery rule is narrower than the civil rule in defining "work product." Documents are generally protected from disclosure under this rule only "to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies." CrR 4.7(f)(1).

151 Wn. App. at 229-30.

The Koenig court then applied the law set forth above to the facts of that case, explaining:

The [witness] statement is a written transcript of [the witness's] oral statement taken by a detective in the Pierce County Sheriff's Department. It does not contain opinions, theories, or conclusions of any attorneys, so under the *criminal* discovery rule it would be subject to disclosure. But it would not be subject to disclosure under the *civil* rule because it is a factual document gathered by the prosecutor in anticipation of litigation. Therefore, under the lead plurality opinion in Limstrom, the [witness] statement is exempt from disclosure under the Public Records Act.

151 Wn. App. at 230 (emphasis added).

- 16 -

The records at issue herein are also "factual document[s] gathered by the prosecutor in anticipation of litigation." Therefore, there can be no doubt that, as in Koenig, if Limstrom applies, the records were exempt from disclosure under the PRA.

The Koenig court then moved to the requestor's contention that it need not (and, presumably, should not) follow Limstrom. In addressing this contention, the court helpfully reframed the question to whether the agency violated the PRA by following Limstrom:

> Koenig argues that plurality opinions like Limstrom are not binding, citing Robinson v. City of Seattle, 102 Wn. App. 795, 805 n.12, 10 P.3d 452 (2000). In Robinson, this court refused to follow a recent plurality opinion that concluded the taxpayers lacked standing to sue the defendant city. The court instead followed a previous opinion that recognized taxpayer standing.
> The question here is whether the prosecutor's office committed a Public Records Act violation by deciding to follow the civil discovery rule in reliance on the plurality opinion in Limstrom. A plurality opinion is often regarded as highly persuasive, even if not fully binding. See Texas v. Brown, 460 U.S. 730, 737, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality opinion) (holding that while one particular plurality opinion was "not a binding precedent, as the considered opinion of four Members of this Court it should obviously be the point of reference for further discussion of the issue").
> Our Supreme Court itself has cited the lead opinion in Limstrom as an interpretation by "this court," and saying "we have held," even while recognizing it as a plurality opinion. See Soter v. Cowles Publ'g Co., 162 Wn.2d 716, 740, 733, 174 P.3d 60 (2007). The dissenting opinion in Limstrom does not enjoy the same status. The lead opinion has extra weight considering that Justice Madsen concurred in the result (holding most records exempt), whereas the result of the dissenting opinion would have been to compel disclosure of all records. Koenig has not identified any authority he believes compelled the prosecutor to disclose documents such as the [witness] statement that were gathered in anticipation of litigation. Unlike in Robinson, there was no opinion other than the Limstrom lead opinion that the prosecutor might have chosen to follow.

- 17 -

151 Wn. App. at 230-31.

The Koenig court then concluded that "it was not a violation of the Public Records Act for the prosecutor's office to withhold records based on the lead opinion in Limstrom." 151 Wn. App. at 231.

We decline to break from the analysis established in Limstrom and applied in Koenig.[14] Thus, the same result obtains in this case, and we hold that the work product rule protected the records herein at issue.[15]

The remaining question then becomes whether the Thomases qualified for the exception to the general work product exemption by making "a special showing of substantial need and a showing that he or she cannot elsewhere obtain the substantial equivalent of the materials without undue hardship."[16] Soter, 162 Wn.2d at 735.

---

[14] The Thomases cite case law that would lead to a different work product rule. These citations are unhelpful. As the trial court herein explained:

[The Limstrom] approach distinguished Washington's work product jurisprudence from several other jurisdictions, including the 2nd and D.C. Federal Circuit courts. These federal courts, and several other jurisdictions, require that the party seeking work product protection for materials "gathered in anticipation of litigation" make a showing that the gathering of such materials would actually reveal the research and opinions, mental impressions, theories, or conclusions of the other party's lawyer. See, e.g., In re Grand Jury Subpoenas, March 19, 2002 and August 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003). This 2nd Circuit and D.C. Circuit line of cases are the cases relied upon by [the Thomases] in their summary judgment motion. Unfortunately, the plurality opinion in Limstrom clearly rejected that reasoning.

[15] The result would be the same even if there were an October 3 request. The work product exemption applies even after the related litigation has terminated. Limstrom, 136 Wn.2d at 613.

[16] The substantial need/undue hardship inquiry appears to be an exception to the general principle stated in RCW 42.56.080 that "[a]gencies shall not distinguish among persons requesting records." Yet, when the legislature intended for an agency to treat a public records request from the source or subject of the information differently, it generally provided an explicit basis for the agency to do so in the statutory exemption itself. See, e.g., RCW 42.56.330(6) ("Any information obtained by governmental agencies that is collected by the use of a motor carrier intelligent transportation system or any comparable information equipment attached to a truck, tractor, or trailer; however, the information may be given to other governmental agencies or the owners of the truck, tractor, or trailer from which the information is obtained."); RCW

- 18 -

This issue was addressed succinctly by the trial court:

> In the present case, Plaintiffs never told the PCPAO at the time they requested the documents that they had a substantial need for the documents and could not procure them elsewhere. [CP 104, 111.] See Koenig, at 223. Even in its current motion, Plaintiffs fail to state a reason why they had a substantial need for the documents, simply claiming that "time was of the essence," and, "nondisclosure denied Plaintiffs the opportunity to inform themselves . . . before the conclusion of the Prosecutor's inquest-like procedure." Plaintiffs Motion at 15. These concerns fail to state any real prejudice from non-disclosure of the records, and the Plaintiffs also fail to explain why they could not have retrieved the documents directly from the law enforcement agencies. Sargent.

The trial court's determination is consistent with the record.[17]

Moreover, the Thomases fail to establish undue hardship associated with obtaining the records elsewhere. By the Thomases' own contention, the records at issue were factual records created by various other law enforcement agencies and then transferred, wholesale, to the PCPAO. Furthermore, it is undisputed that the criminal investigation had been transferred from those agencies to the PCPAO before the PCPAO denied the Thomases' request. Accordingly, per Sargent, the requested records would have been available from the other law enforcement agencies at the time of the denial. Thus, by the time that the Thomases attempted to make a "substantial need" showing (after the PCPAO's denial, in the course of the underlying litigation), they could not possibly have

---

42.56.440(1) ("These records will be available only to the veteran, the veteran's next of kin, a deceased veteran's properly appointed personal representative or executor, a person holding that veteran's general power of attorney, or to anyone else designated in writing by that veteran to receive the records."). Notwithstanding this apparent tension, it is firmly established that the work product rule is part of the exemption under RCW 42.56.290.

While interesting, because it is of no moment to this appeal, we need not further evaluate the issue.

[17] Indeed, on appeal, the Thomases make the same general argument regarding their substantial need, relying primarily upon the prosecutor's "chosen policy" to determine "behind closed doors" whether an officer-involved shooting was lawful. Appellants' Opening Br. at 38.

demonstrated the required "undue hardship." For the same reason, the Thomases cannot make a substantial need showing at this time.

The records requested by the Thomases were properly withheld pursuant to both the law enforcement exemption and the work product rule.

Affirmed.

_Dwyer, J._

We concur:

_Leach, J._

_Becker, J._