**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

|  |  |  |
|---|---|---|
| ARTHUR WEST, | ) | No. 82057-5-I |
|  | ) |  |
| Appellant, | ) |  |
|  | ) | DIVISION ONE |
| v. | ) |  |
|  | ) |  |
| OFFICE OF THE GOVERNOR, | ) |  |
| STATE OF WASHINGTON, | ) |  |
|  | ) | UNPUBLISHED OPINION |
| Respondent. | ) |  |
|  | ) |  |

MANN, C.J. — Arthur West appeals the trial court's order granting summary judgment and dismissing his action against the Office of the Governor (Office). West argues that the trial court erred in finding that the Office conducted a reasonable search under the Public Records Act (PRA), chapter 42.56 RCW, denying his motion to strike, entering a protective order limiting discovery, and applying the Yousoufian[1] factors to determine penalties against the Office. We disagree and affirm.

FACTS

A. Background

On December 24, 2018, West submitted a public records request to the Office for: "1) Any records of requests for a declaration of emergency or the use of the

---

[1] Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 229 P.3d 735 (2010).

governor's emergency powers to address homelessness, 2015 to present; and 2) Any responses thereto, or communications concerning such requests." Taylor Wonhoff, who handles the Office's public record requests, inadvertently focused on the first half of West's request and failed to address the second half.

To address West's request, Wonhoff forwarded the inquiries to Jim Baumgart, Senior Policy Advisor on Human Services, and Jeanne Blackburn, Director of Constituent Services. Baumgart searched his hard copy and electronic files, text messages on his state-issued phone, voicemails, and notes. He found five potentially responsive e-mails and provided them to Wonhoff. Blackburn searched her IQ database system, AskGov database, and scanned versions of hard copy correspondences. She found four potentially responsive e-mails and provided them to Wonhoff. On January 8, 2019, Wonhoff provided these potentially responsive e-mails to West.

On January 15, 2019, West filed suit, believing the Office had not provided all the responsive records. After reading West's complaint, Wonhoff realized his oversight regarding the second half of West's request. He began a second search to address his mistake.

To finish fulfilling West's request, Wonhoff searched the Office's archived Outlook vault for e-mails sent between January 1, 2015, and December 24, 2018, using the search terms: "declaration of emergency" OR "state of emergency" AND "homeless" OR "homelessness." The search yielded 1975 files, 176 of which were responsive to West's request. Wonhoff also identified seven additional current and former staff members who could have potentially responsive records, searching their archives as

well. After this second search, he provided another installment of records to West on January 22, 2019.

Included in Wonhoff's second installment were six pages of e-mails between the Office and its counsel at the Attorney General's Office (AGO), with redactions. In the e-mails, the Office consulted senior counsel Brian Bucholz for legal advice on March 3 and 4, 2016. Bucholz forwarded this e-mail to other members of the AGO, including solicitor general Noah Purcell. The e-mails between AGO staff and Purcell (the Purcell e-mails) did not come up in the search, nor could Wonhoff obtain them via a subsequent, targeted search. In total, the Office delayed delivery of its second installment of records by 14 days.

B. Procedure

On April 12, 2019, following a scheduling conference, West failed to file his opening brief. The Office nonetheless submitted its brief asking that the hearing proceed as scheduled, and that the court find the Office violated the PRA only by delaying delivery of the second installment of records by 14 days. The Office requested the court impose a $14 penalty as a result. In response, West filed a motion seeking penalties, an extension of the hearing date, and an in camera review of unredacted copies of the Purcell e-mails that he had received through a separate PRA request with the AGO. On May 10, 2019, West and the Office attended a scheduling hearing wherein the court granted West's request for an extension and allowed for supplemental briefing. West also requested additional discovery in order to determine if the Office properly conducted its search for the Purcell e-mails. The court agreed, but limited West's discovery to the second Wonhoff declaration (the declaration that detailed the

search for the Purcell e-mails).  The court also denied the in camera review of the Purcell e-mails because it did not have the authority to order a non-party (the AGO) to produce records or a party (the Office) to produce records that it did not have.

On May 31, 2019, West submitted a motion to strike the second Wonhoff declaration, along with 20 interrogatories, and 20 requests for production.  The motion to strike and many of the discovery requests focused on the legality of Wonhoff's position in the Office.  The Office partially responded to requests it thought were within the limited discovery and objected to the others.

On June 13, 2019, the Office moved for a protective order.  The Office argued in part that the protective order was required because the legality of Wonhoff's position was irrelevant and unrelated to whether Wonhoff conducted a proper records search.  West then moved to compel discovery.

Following oral argument, the trial court granted the Office's motion for a protective order and denied West's motions to strike and compel discovery.  The court ruled that the discovery into the legality of Wonhoff's position was outside of the limited scope of discovery and irrelevant.

On June 28, 2019, the court heard argument regarding the Office's purported PRA violation and potential penalties.  At the hearing, the Office conceded that it violated the PRA based on its initial oversight of the second portion of West's PRA request, which the court accepted.  The court also found that the Office did not have the Purcell e-mails in its possession at the time of West's request, and concluded that the PRA does not require the Office to search for or request records from other state

-4-

agencies. After consideration of the Yousoufian factors, the court awarded West $14 in penalties and $885.31 for costs and attorney fees pursuant to the parties' stipulation.

West appeals.

ANALYSIS

A. Legality of Wonhoff's Position

As a threshold matter, West spends a large portion of his arguments at trial and on appeal challenging the legality of Wonhoff's position. To support these arguments, West introduces myriad quotes, including those of Marcus Tullius Ciciro, Justice Brandeis, Justice Cardozo, and the D.C. Circuit Court of Appeals. None of West's authorities, however, shed light on how this court is to take into consideration the legality of Wonhoff's position as it relates to the sufficiency of a PRA request. As the Office noted during oral argument, and the trial court recognized, the legality of Wonhoff's position has no bearing on the veracity of his declarations. The declarations outline Wonhoff's searches, and it is through the reasonableness of those searches that we review an agency's response to a PRA request.

B. Adequacy of the Office's Search

West argues that the trial court erred in finding the Office conducted a reasonable search because the Office failed to properly search for or produce the Purcell e-mails. West also argues that judicial precedent, as well as the Constitution of the State of Washington, require that the Office retrieve the Purcell e-mails from the AGO. We disagree.

We review an agency's response to a PRA request de novo. City of Fed. Way v. Koenig, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009). In reviewing the adequacy of this

response, the inquiry is not the existence of a responsive document, but rather if the search itself was adequate under a standard of reasonableness. <u>Neighborhood Alliance of Spokane County v. County Of Spokane</u>, 172 Wn.2d 702, 719-20, 261 P.3d 119 (2011). The search must have been "reasonably calculated to uncover all relevant documents." <u>Neighborhood Alliance</u>, 172 Wn.2d at 719-20. To demonstrate the search was reasonable, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith" that "include the search terms and type of search performed, and . . . establish that all places likely to contain responsive materials were searched." <u>Neighborhood Alliance</u>, 172 Wn.2d at 721.

Here, the Office properly demonstrated that its search was reasonably calculated to uncover all relevant documents. The Office reviewed nearly 2,000 e-mail results, forwarded West's request to employees overseeing human and constituent services, searched the AskGov and IQ constituent databases, searched its share drives and scan folders, examined potentially responsive hard copy documents, and searched records of seven additional individuals who could have addressed the issue of homelessness or emergency powers. West's assertion that, because the Office did not uncover the Purcell e-mails, the search was inadequate, is without merit. The Office performed an additional search to locate these e-mails to no avail. The Office was not required to produce e-mails that were not within its possession.

West asserts that the Office should have contacted the AGO to locate and provide the Purcell e-mails, but this court's precedent states the contrary.[2] The PRA does not require an agency go beyond its own records to identify or locate a requested record. See, e.g., Limstrom v. Ladenburg, 136 Wn.2d 595, 604 n.3, 963 P.2d 869 (1998) (lead opinion) (holding that on its face the PRA does not require, nor is it interpreted to require, that an agency go outside its own records and resources to try and identify or located the requested record); Koenig v. Pierce County, 151 Wn. App. 221, 211 P.2d 423 (2009) (holding that the prosecutor had no duty to inquire with other county departments regarding the record requests it received). Therefore the Office had no duty to contact the AGO regarding the Purcell e-mails; the Office's search of its own records was sufficient to fulfill the requirements of the PRA.

West relies on Article III, section 5 of the Washington State Constitution for the premise that the Office was required to search other agencies for responsive records. This reliance is misplaced. Section 5 states: "The governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed." WASH. CONST. art. III, § 5. Nothing in this section imposes a requirement on the executive to contact other branches of the state government in the context of a PRA request.

West has wholly failed to demonstrate that the Office performed its records search inadequately. Nor has West provided law or binding precedent showing that the

---

[2] West also relies on Defs. of Wildlife v. United States Dep't of Interior, 314 F. Supp. 2d 1, 13 (D.D.C. 2004), for the premise that the Office was required to contact the AGO regarding the Purcell e-mails. Federal precedent from the D.C. Circuit is not sufficient to contradict Washington case law. Further, in Defs. of Wildlife, there was a regulation requiring the Department of Interior to forward the Freedom of Information Act request to another office that was likely to have responsive records. 314 F. Supp. 2d at 13; 43 C.F.R. § 2.22(a)(1). No such regulation exists here.

Office was required to retrieve additional records from the AGO. Therefore, the Office's search was reasonably calculated to uncover all relevant documents responsive to West's PRA request.

### C. Limit on Discovery

West argues that the trial court erred in limiting his additional discovery to the second Wonhoff declaration and subsequently granting the Office's motion for a protective order. We disagree.

We review a trial court's limit on discovery, as well as its denial of a motion to compel or entry of a discovery protective order for an abuse of discretion. Howard v. Royal Specialty Underwriting, Inc, 121 Wn. App. 372, 379, 89 P.3d 265 (2004); Diaz v. Washington State Migrant Council, 165 Wn. App. 59, 265 P.3d 956 (2011); Mossman v. Rowley, 154 Wn. App. 735, 742, 229 P.3d 812 (2009). "A court abuses its discretion when it bases its decision on unreasonable or untenable grounds." Clarke v. State Attorney General's Office, 133 Wn. App. 767, 777, 138 P.3d 144 (2006) (citing Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 665, 989 P.2d 1111 (1999)).

Trial courts manage the discovery process in a way that encourages "full disclosure of relevant information while protecting against harmful side effects." Kramer v. J.I. Case Mfg. Co., 62 Wn. App. 544, 556, 815 P.2d 798 (1991). Here, the trial court properly balanced the interests of the parties when it limited discovery to the second Wonhoff declaration.

In limiting discovery, the court stated:

> I think that's reasonable under these circumstances and strikes that balance between allowing Mr. West [the opportunity for additional discovery], but at the same time recognizing that there are some hardships here for the Governor's Office [in delays and expanded scope of

trial], who I'll just note for the record they're here. They're ready. They've complied. But I think to get this matter fairly heard, that's why I'm doing what I'm doing.

In limiting discovery, the court was allowing West to pursue his theory that the Office did not conduct their PRA search reasonably, but also avoiding additional delay or expanded scope of the proceedings, particularly in light of West having already received an extension. This limitation does not rise to an abuse of discretion.

Likewise, the trial court's entry of a protective order was appropriate. A court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." CR 26. "The frequency or extent of use of the discovery methods . . . shall be limited by the court if it determines that . . . (C) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitation on the parties, resources, and the importance of the issues at stake in the litigation." CR 26(b)(1). In light of the appropriate limit on discovery, the protective order prevented West's further attempts to elicit out-of-scope or irrelevant information from the Office.

The trial court's order limiting discovery bound the scope of West's discovery requests. West nonetheless submitted 20 interrogatories and 20 requests for production that were outside the scope of the second Wonhoff declaration. Rather than focus on the sufficiency of Wonhoff's search for the Purcell e-mails, West began attacking the legality of Wonhoff's position. These

attacks were outside the scope of Wonhoff's search and, as we have already noted, irrelevant in analyzing the reasonableness of a PRA search.

We review a trial court's limit on discovery, as well as its denial of a motion to compel or entry of a discovery protective order for abuse of discretion. Here, the trial court properly weighed the parties' interests, allowing West limited discovery while not overburdening the Office. Despite this limitation, West submitted discovery requests that were neither in the scope ordered by the trial court nor relevant. Therefore, the trial court did not abuse its discretion when entering the protective order.

D. Penalty Determination

West argues that the court erred in applying the Yousoufian factors to award a $14 penalty. We disagree.

We review a trial court's determination of a PRA penalty assessment for abuse of discretion. Hoffman v. Kittitas County, 194 Wn.2d 217, 224, 449 P.2d 277 (2019). Determination of a PRA penalty involves two steps: 1) determine the amount of days the party was denied access and 2) determine the appropriate per day penalty not to exceed $100 depending on the agency's actions. Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 459, 229 P.3d 735 (2010); RCW 42.56.550(4). Here, the court did not abuse its discretion in determining the $14 penalty.

The trial court properly considered all circumstances in awarding West the $14 penalty. The court stated that "although this penalty is at the low-end of the range, [it] is appropriate given the factual circumstances of the violation, the fact that the violation in question was the result of an oversight, the fact that the agency otherwise responded

-10-

reasonably and promptly to the request, and the fact that the agency promptly cured the oversight when it was caught." In reaching its penalty determination, the trial court acknowledged the amount was low, but carefully considered the relevant legal standard and applied that legal standard to the facts at hand. Thus, the court in neither respect abused its discretion.

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____    _____
Coburn, J.                            Dwyer, J.